THE PEOPLE *ex rel.* John J. Healy, State's Attorney,
*v.*
CHARLES P. R. MACAULEY.

*Opinion filed October 23, 1907—Rehearing denied Dec. 4, 1907.*

1. ATTORNEYS AT LAW—*what standard of moral conduct is required of an attorney.* The standard of personal and professional integrity which should be applied to persons admitted to practice law in the courts is not satisfied by such conduct as merely enables them to escape the penalties of the criminal law.

2. SAME—*an attorney who conspires to extort money should be disbarred.* An attorney who, upon discovering that a foreign corporation has failed to comply with the statutes of Illinois, begins a series of harassing suits and organizes a corporation of the same name for the apparent purpose of engaging in similar business but for the sole purpose of extorting money from the corporation, is guilty of unprofessional conduct and should be disbarred, notwithstanding he acts openly and under a claim of right.

3. SAME—*youth and inexperience do not extenuate acts inconsistent with common honesty.* Youth and inexperience of an attorney do not extenuate the offense of a fraudulent conspiracy to extort money, which is inconsistent with the common honesty which should be the attribute of every attorney licensed by the Supreme Court to practice law.

INFORMATION to disbar.

The State's attorney of Cook county filed an information in this court for the disbarment of the respondent, Charles P. R. Macauley, who was enrolled as an attorney

on June 7, 1900. The cause was referred to a commissioner to take the evidence and report his conclusions of law and fact, and this has been done.

For several years prior to the year 1900 the Colliery Engineer Company, a Pennsylvania corporation, had been conducting a school under the name of "The International Correspondence Schools of Scranton, Pennsylvania." Instruction was by correspondence through the mails and the students were furnished text books by the corporation. The school had agents in all parts of the country soliciting students. and had built up a large business. An active competitor of this school was the American School of Correspondence of Boston, of which Romanta F. Miller, Jr., was president. Soon after respondent's admission to the bar he was employed as a solicitor by the American School of Correspondence, and sought to induce students of its competitor to abandon their contracts and make new ones with him. He succeeded in inducing one Charles Peacock to abandon his contract with the Scranton corporation upon promise that the respondent would defend him without charge in case a suit was commenced for the violation of the contract. Suit was brought and respondent appeared for the defendant, for which he received $25 from Miller. The defense was that the Pennsylvania corporation was illegally doing business in this State. After the trial the respondent induced the State authorities to begin an action against the Pennsylvania corporation to recover the penalty provided by statute in case a foreign corporation illegally does business within this State. In August, 1901, he went to Scranton, Pennsylvania, and induced certain citizens to apply for a charter under the laws of that State for a corporation to be known as "The International Correspondence Schools," with its principal office at Scranton. He represented that he would make a good sum of money for himself and those who joined him, as the Colliery Engineer Company would pay him well to give up the charter which he was applying

230—14

for. Upon learning the object of the respondent some of the signers requested to have their names erased from the application. Other names were substituted and notice of the application published. While the application was pending, the officers of the Colliery Engineer Company made application for a charter for the International Correspondence Schools and for a change of the name of the Colliery Engineer Company to the International Text Book Company. Respondent opposed these applications and the Colliery Engineer Company opposed respondent's application for a charter. While these contests were pending respondent obtained a charter from the State of Illinois for a corporation to be known as "The International Correspondence Schools of Scranton, Pennsylvania," and made application to the Pennsylvania authorities for a license for it to do business in that State as a foreign corporation, which application was opposed by the officers of the Colliery Engineer Company. Respondent then formed what was known under the laws of Pennsylvania as a limited partnership, using the name "The International Correspondence Schools, Limited." He also formed another limited partnership under the name of "The Colliery Engineer Company, Limited." His applications for a charter and for a license for his Illinois corporation to do business in Pennsylvania were refused and the application of the officers of the Colliery Engineer Company for a charter and a change of name was allowed. Respondent then applied for a charter under the Pennsylvania law for a corporation to be known as "The Colliery Engineer Company," and thereupon a bill was filed by the International Text Book Company, successor to the Colliery Engineer Company, claiming to be the owner of all of the capital stock of the International Correspondence Schools, to restrain the repondent and his associates from conducting schools or doing any other business under the names "International Correspondence Schools" and "Colliery Engineer Company,"—the names of the two limited

partnerships formed by him,—and also to prevent the Illinois corporation known as the Illinois Correspondence Schools of Scranton, Pennsylvania, from using any of said names. While the bill was pending respondent was arrested on a charge of conspiracy and held to bail. He finally agreed with the manager of the International Text Book Company to abandon all proceedings inimical to the Colliery Engineer Company or its successors, not to further annoy or harass said International Text Book Company, to surrender all his rights and papers connected with said proceedings and to permit the injunction prayed for in said bill to be made perpetual. He also signed a written statement setting forth his object and purpose in the business in which he had been engaged. The commissioner found that the respondent originated and devised the scheme aforesaid to annoy and injure the Colliery Engineer Company in its business by instigating prosecutions against said company on the charge of violating the statutes of the several States concerning foreign corporations, advised the American School of Correspondence of such scheme, sought the conduct thereof as its attorney, and was employed for such purpose by Romanta T. Miller, Jr., its president. It was while employed as such attorney that respondent made the efforts above mentioned to secure the various charters of incorporation. Miller contributed over $600 to the scheme, but about August 24, 1901, advised respondent that the American School of Correspondence was unwilling to have its name used in that connection, and that the remittances already made and thereafter to be made in aid of said scheme should be treated as Miller's personal investment in said business. He also suggested that respondent should sever all official relations with the American School of Correspondence, but that this would make no difference in the personal relation of Miller to the business.

All the acts of the respondent in these transactions were done with the approval and concurrence of Romanta T.

Miller, Jr., and their motive was to harass and annoy the Colliery Engineer Company, and, by causing it large expense and injuring its business, to induce it to pay the respondent and his associates a large amount of money to desist from further annoyance and injury. The respondent and his associates at no time intended to conduct the business of a correspondence school, but they conspired to take the name of the Colliery Engineer Company in order to cause it to pay a large sum of money to be relieved from their attacks upon and injury to its already established business, the sole purpose being to compel that company to buy its peace from respondent's attacks by the payment of his demands.

JOHN L. FOGLE, for relator.

CANTWELL & ROTH, and CHARLES H. SOELKE, for respondent.

Mr. JUSTICE DUNN delivered the opinion of the court:

The substance of the charge against the respondent is, that having discovered what he regarded as a defect in the charter of the Colliery Engineer Company, he organized a conspiracy to harass that company and to embarrass its business by organizing corporations having its name or the name in which its business was transacted, apparently for the purpose of conducting a similar business but really for the sole purpose of injuring the business of the Colliery Engineer Company and extorting money from it. The commissioner has found that charge is proved, and no exception having been taken to bring the evidence or any of his rulings before us, it is to be taken as true. The statement of the charge made and proved sufficiently characterizes the moral quality of the respondent's acts. His counsel seek to justify them for the reason that what he did was done openly, under a claim of right, and that his action was

praiseworthy because he gave the Colliery Engineer Company an opportunity to test the question at the start. This argument would carry weight if the respondent had been in good faith attempting to organize a corporation for a lawful purpose, but while pretending to do so his sole object was the dishonest and unlawful purpose of extorting money by interfering with the established business of a corporation already organized. He did not intend to engage in the business for the purpose for which he pretended to organize his corporation, but he intended to demand money for not doing so.

The standard of personal and professional integrity which should be applied to persons admitted to practice law in the courts is not satisfied by such conduct as merely enables them to escape the penalties of the criminal law. The statute and the rules of this court require a good moral character as a condition precedent to a license as an attorney. This includes at least common honesty, and is not consistent with an effort to obtain a part of the wealth of another by any means not denounced by the criminal statutes. The predatory instinct which led to respondent's raid upon the Colliery Engineer Company is accompanied with an obtuse moral discernment which seems not to realize that the respondent's use of the forms of law in that matter was not proper. Youth or inexperience does not extenuate the offense of a fraudulent conspiracy to extort money that is inconsistent with the common honesty which should be an attribute of every attorney having the license of this court.

No reason is apparent why the lapse of time in this case makes it unjust or unfair to require the respondent to answer this charge.

The rule will be made absolute and respondent's name stricken from the roll of attorneys of this court.

*Rule made absolute.*