THE PEOPLE ex rel. John J. Healy, State's Attorney, Relator, vs. FEDERICO M. BARRIOS, Respondent.

*Opinion filed December 15, 1908—Rehearing denied Feb. 3, 1909.*

1. ATTORNEYS AT LAW—*what is ground for disbarment.* An attorney who, in seeking to enforce an order for temporary alimony in favor of his client, who was an ignorant woman, represents to the court, by affidavits and oral statements, that the money is needed by his client for the support of herself and her small children when he is, in fact, collecting it for his own use under an order signed by the client, is guilty of fraud upon the court and should be disbarred, notwithstanding he pays a small part of the money to his client.

2. SAME—*attorneys who cannot conform to proper standard of integrity must find other employment.* A high sense of personal and professional integrity must be observed by attorneys, not only toward their clients but toward the courts in which they practice, and attorneys who cannot conform to the standard fixed must find employment in other fields than the legal profession.

INFORMATION to disbar.

This is a proceeding for the disbarment of Federico M. Barrios, a member of the bar engaged in the practice of his profession in Chicago. The information was filed at the relation of certain members of the bar constituting the grievance committee of the Chicago Bar Association, and as amended charges:

*First*—That respondent was employed about August, 1904, by one Emma Heisler, of the city of Chicago, in a divorce proceeding instituted against her by her husband; that by an oral agreement made by the parties at the time, Mrs. Heisler was to pay respondent $25 in full for his services; that $10 was paid at the time; that Mrs. Heisler was a washerwoman, of very small means, and thereafter, in order to pay the balance of said fee, she began doing respondent's washing, devoting one day in each week to that work from August, 1904, to December, 1906; that shortly after the employment of respondent Mrs. Heisler paid him the further sum of $10; that subsequently various sums of

money were allowed Mrs. Heisler as solicitor's fees in the proceeding, amounting to $70; that Mrs. Heisler's husband was required by order of court to pay her as alimony, during the pendency of the divorce suit, $3 per week; that the order for its payment was procured by respondent without Mrs. Heisler's knowledge; that the payments of alimony were made by complainant in the divorce suit to the clerk of the court and were collected from the clerk by respondent and retained by him to the amount of $81, of all of which Mrs. Heisler was ignorant; that the services of Mrs. Heisler as a washerwoman for one day in the week, for one hundred and sixteen weeks, were worth $1.50 per day, or a total sum of $174, which, together with the amounts collected by respondent, paid by order of the court as solicitor's fees, the amount of alimony allowed Mrs. Heisler, collected by respondent, and the cash paid him by her, made a total sum received by him of $345, and that although respondent was only entitled to $25, he had failed to account to Mrs. Heisler for the money received by him in excess of that amount but fraudulently converted it to his own use. The information further alleged that respondent claimed he and Mrs. Heisler made an agreement in October, 1905, by which he was to receive, in addition to the amount paid him in cash by her, all moneys collected in the divorce proceeding from her husband, as alimony or otherwise, but, notwithstanding said agreement, the information charges that at various times after October, 1905, and up to October, 1906, respondent falsely and fraudulently represented to the circuit court that the alimony ordered to be paid in said proceeding was for the use of Mrs. Heisler and her children and to be used for their living expenses.

*Second*—That the respondent was, on the third day of February, 1900, indicted by a grand jury of the criminal court of Cook county for unlawfully making an assault upon one Cora D. Carson, a female, with intent feloniously and forcibly to ravish and carnally know her against her

will; that thereafter respondent entered a plea of not guilty
to said indictment, but afterwards withdrew said plea and
entered a plea of "guilty of assault in manner and form as
charged in said indictment;" that evidence was heard by
the court and a judgment entered against respondent that
he pay a fine of $100 and costs and stand committed until
the fine and costs were paid, wherefore the information al-
leges that the respondent's license as an attorney and coun-
selor at law should be revoked and canceled and his name
stricken from the roll of attorneys of this court.

Respondent's answer to the first charge in the informa-
tion denies that he agreed to take Mrs. Heisler's case for
$25, and alleges the agreement was that he was to receive
a reasonable fee out of the money collected in the divorce
proceedings. Respondent denies that Mrs. Heisler washed
for him, in payment of his fees, one hundred and sixteen
weeks, but alleges that every time she did wash for him
he paid her for her services, and that during the time she
claims to have washed for respondent he had four other
washerwoman. The answer alleges that prior to respond-
ent's engagement by Mrs. Heisler in the divorce suit he rep-
resented her before a police magistrate in a proceeding in-
stituted by her against her husband for wife abandonment,
on account of which she became indebted to him for ser-
vices in the sum of $30; admits that he collected $20 as
solicitor's fees from Mrs. Heisler's husband but denies that
he collected $70; admits that he collected $81 as alimony,
a part of which he applied on the expenses of the divorce
proceedings, and avers that this was done with the consent
of Mrs. Heisler. Respondent denies that he obtained an
order for the payment of alimony without the knowledge
of Mrs. Heisler, and avers that out of the $81 collected by
respondent he paid Mrs. Heisler $9, for which he held her
receipt. The answer further avers that Mrs. Heisler exe-
cuted to him a written authority in January, 1906, to collect
the alimony; that she was fully informed as to all money

collected and the disposition of it, and that she paid rent to the amount of $25 out of said alimony money to her mother's landlord. Respondent avers that all money he received from Mrs. Heisler was $20 in cash, about $72 of alimony money and $20 solicitor's fees from complainant in the divorce suit, and that the expenses attending the divorce suit were $62.75, and alleges that Mrs. Heisler owed him $30 for services in the justice's court and for other legal services, which she never paid, which she told him to take out of the alimony allowed her in the divorce case; that his services in the divorce case were reasonably worth $300, and sets out in considerable detail a statement of the services rendered by him. Respondent denies falsely and fraudulently representing to the court that the alimony paid by Mrs. Heisler's husband was for the use of herself and children, and denies that he ever at any time concealed, or attempted to conceal, from Mrs. Heisler procuring the allowance and payment of the alimony or that he ever took any steps in the case without her knowledge.

As to the second charge in the information, the answer admits the allegations with reference to the indictment of respondent and his plea of guilty to assault in manner and form as charged and the judgment of the court on said plea, but alleges that the plea did not include the charge of an assault upon Cora D. Carson with intent to feloniously and forcibly ravish and carnally know her against her will, but simply admitted the making of an assault upon her.

The cause was referred to John F. Holland, one of the masters in chancery of the superior court of Cook county, as special commissioner, to take the testimony and report his conclusions of law and fact. After hearing the testimony the commissioner reported that he found from the evidence that respondent agreed with Mrs. Heisler to perform the necessary legal services for her in the divorce suit for $25, to be paid by her in cash as soon as she was able to earn it; that in the contract of employment there was no provision

for services to be rendered by respondent in relation to the custody of the children of Mrs. Heisler and her husband or with reference to procuring alimony or solicitor's fees in the divorce proceeding, and no agreement was made about the disposition of any solicitor's fees or alimony that might be collected by order of the court; that shortly afterwards Mrs. Heisler paid respondent $25 in accordance with the agreement; that in November, 1905, respondent procured an order of the court directing Mrs. Heisler's husband to pay $20 solicitor's fees and $3 per week temporary alimony; that the $20 solicitor's fees was paid the respondent by the attorney for Mrs. Heisler's husband, Frederick Heisler; that during the months of November and December, 1905, and January, 1906, Frederick Heisler paid to the clerk of the court $25 temporary alimony, which was paid to one Frank Converse for rent by order of Mrs. Heisler; that some time in January, 1906, the respondent obtained from Mrs. Heisler a written order authorizing the clerk of the circuit court to pay respondent all money paid by Frederick Heisler as temporary or permanent alimony until otherwise notified, except the sum of $4, which was to be paid to Converse; that after said order was obtained the respondent treated all alimony paid by Frederick Heisler in said divorce proceeding as his own, and between March, 1906, and November, 1906, collected the sum of $81 of money so paid by Frederick Heisler to the clerk of the circuit court; that out of that sum he paid Mrs. Heisler at one time $3, at another $3 and at another $6 and retained all the balance of the money collected by him. The commissioner further finds that at various times Frederick Heisler was in arrears in the payment of alimony, and that applications were made to the court by respondent in the months of April, June, July and December, 1906, for attachments for contempt to enforce payment; that said applications were based on affidavits made by Mrs. Heisler, in certain of which it was stated "that affiant [Emma Heisler]

and her two children was in need of the money so past due," and in certain of which it was stated "that affiant [Emma Heisler] has two children of the said complainant to support and is in need of said temporary alimony," and in certain of which it was stated "that affiant [Emma Heisler] has no other means of support except her own hard labor and that she labors daily when she can find work;" that respondent presented these affidavits to the court, and verbally stated at the time that the alimony so in arrears was needed and desired for the support of Emma Heisler and her two infant children. The commissioner further found that respondent rendered other legal services for Mrs. Heisler for which he had not been paid otherwise than by the alimony collected and retained by him, but that he kept no account of his services or of the moneys collected and disbursed by him and never rendered Mrs. Heisler any statement thereof; that Mrs. Heisler rendered services for the respondent as a washerwoman, for which she was occasionally paid, but whether paid in full or not could not be determined from the evidence; that the divorce suit was tried in November, 1906, and a verdict returned in favor of Mrs. Heisler; that the case was tried for her by John A. Ronayne, an attorney employed on her behalf by respondent and with her knowledge and consent; that the trial lasted two days and respondent paid Ronayne $50 for his services. The commissioner further finds that the services rendered by respondent to Mrs. Heisler were reasonably worth all he collected from her and all he received that was paid by Frederick Heisler as solicitor's fees and alimony. Upon the second charge in the information, after reciting the record of the indictment and conviction of respondent, the commissioner reports that Cora D. Carson, upon whom the assault was made, was at the time a girl sixteen years old, and was employed the day previous to the assault as a stenographer in the office of respondent and was at the time of said assault in respondent's office.

The conclusion of the commissioner is, that respondent's method of doing business with clients, as shown by the evidence, could not be too strongly condemned, but as the amount of money received by him did not exceed the sum fairly due him for the services rendered, the commissioner was of opinion that it could not be said the evidence established respondent's guilt of unprofessional or criminal conduct; and as to the conviction in the criminal court, the commissioner reported that as the offense "was committed nine years ago, and, so far as this record discloses, his life has been free from any criminal conduct during that period, the undersigned is led to recommend that the extreme penalty of disbarment be not imposed upon the respondent."

JOHN L. FOGLE, for relator.

CHARLES HUGHES, for respondent.

Mr. JUSTICE FARMER delivered the opinion of the court:

Relator filed no exceptions to the commissioner's finding of facts, but excepted to his conclusion that under the facts as found respondent should not be disbarred and his name stricken from the roll of attorneys of this court. Respondent has filed exceptions to the commissioner's finding of facts and also to his conclusions therefrom, it being the claim of respondent that the conclusions are prejudicial to him. Appreciating the importance of the case to respondent, we have carefully read all the testimony as abstracted by him and much of it from the record also. In many respects it was of a very contradictory nature. It will only be necessary to consider the facts the commissioner reported as proven and to determine whether those facts were proven by the testimony, and if so, whether they justify and sustain the conclusions of the commissioner.

It is stoutly denied by respondent that the proof justified the finding that he agreed with Mrs. Heisler to repre-

sent her in the divorce case for $25, but he claims the agreement was he was to receive a reasonable fee for his services. Our consideration of the evidence on this question satisfies us that the commissioner's report in this respect is sustained by it. It is very apparent that Mrs. Heisler was very poor and very ignorant. She claimed to have been driven out of her home by her husband. They had two young children. One of them was in Mrs. Heisler's custody when she first employed respondent and he afterwards secured the custody of the other one for her. Her testimony shows she had very little comprehension of a court proceeding or the necessary steps required to be taken in her case. She appears to have relied implicitly upon respondent and to have done as he advised her. In a short time after his employment Mrs. Heisler paid respondent the $25. This employment appears to have been in September, 1905. In October following, respondent filed an answer to Frederick Heisler's bill for divorce and also filed a cross-bill for separate maintenance. In November, 1905, he secured an order of the court requiring Frederick Heisler to pay his wife $20 for solicitor's fees and $3 per week alimony *pendente lite.* The $20 solicitor's fee was paid to respondent by Frederick Heisler's counsel and was retained by him. Some of the payments of alimony were made weekly, in accordance with the order of the court, but at different times Frederick Heisler failed to make the payments, and applications were made by respondent to the court for attachments for contempt, to enforce payment. Payments of the alimony were by the order of the court directed to be, made by Frederick Heisler to the clerk of the court. Out of the first alimony so paid in, $25 was by order of Mrs. Heisler paid to her mother's landlord on rent. The proof shows, and the respondent admits, he received $81 of the alimony money, but he contends he had the consent and authority of Mrs. Heisler to receive it; that he paid her a portion of it, and a portion of the remainder he paid, with her

knowledge and consent, on expenses incurred in the divorce proceeding. The proof does not sustain the allegation of the information that Mrs. Heisler had no knowledge of the payments of any alimony being made by her husband. We are strongly impressed from the evidence that she was not advised as to all the payments made, but as $25 of it was paid out on her order, it is clear she knew of some payments being made. There is other proof also in the record tending to show that she knew of payments being made. Respondent procured from Mrs. Heisler a written order, addressed to the clerk of the circuit court, directing him to pay respondent all money paid in by Frederick Heisler as temporary or permanent alimony until otherwise notified, except $4, balance of the $25 she had ordered paid on rent. This order bears no date, but the commissioner found from the evidence that it was signed in January, 1906. The divorce suit was tried by jury in November, 1906. The trial lasted two days and resulted in a verdict finding Mrs. Heisler not guilty of the charges in the bill—adultery and drunkenness. The trial was conducted for Mrs. Heisler by an attorney named Ronayne, who was employed by respondent for that purpose, he claims, and the commissioner so finds, with her knowledge and consent, and to whom he paid $50 for his services. The total amount of money the proof shows respondent received was $126. Of this amount $25 was paid by Mrs. Heisler, $20 solicitor's fees and $81 alimony paid by Frederick Heisler. The commissioner finds respondent paid out of said moneys to Mrs. Heisler $12 and to Ronayne $50, leaving a balance of $64. Respondent testified that he paid expenses for Mrs. Heisler for the service of writs, orders, rules, typewriting, etc., to the amount of $62, but he kept no account of these expenses as they were incurred and paid. His testimony on this question was based upon recollection and stands unaided by any books or memoranda. He kept no record of the services rendered Mrs. Heisler or of moneys received or paid out and never at any time ren-

dered her any statement of such matters, and produced no receipts for money paid out except the $50 paid Ronayne and $12 paid Mrs. Heisler. As we understand the evidence, the first service performed for Mrs. Heisler by respondent was to have her husband arrested on a warrant issued by a justice of the peace for wife abandonment. This was probably before the bill for divorce was filed by Frederick Heisler. But that suit was abandoned. Respondent claims to have paid out $5 on the expenses of the wife abandonment suit, also a small sum to a detective he says he was instructed by Mrs. Heisler to employ. Mrs. Heisler denies any knowledge of any of these payments and denies she authorized or ever knew of the employment of a detective.

If the contract of employment had been, as contended by respondent, that he was to be paid what his services were reasonably worth instead of the fixed sum of $25, as found by the commissioner, and as we think he was warranted in finding, the amount respondent received could not be considered unreasonable. While $25 may have been a small fee to respondent, in Mrs. Heisler's condition it was a considerable sum. She had no means and had to support herself and small children by menial labor. The money to pay the $25 had to be saved out of her small earnings, and it is to her credit that she paid it as promptly as circumstances would admit. Her ignorance required that she be dealt with by her lawyer in the frankest possible manner, and greater pains taken to fully inform her of what was being done all the time, and what her rights were, than would be required of a more intelligent and better informed client. It is well known to the legal profession that ignorant clients are more difficult to deal with than intelligent ones. Respondent, however, seems to have had no difficulty in obtaining the confidence of Mrs. Heisler and procuring her to do whatever he asked of her in the litigation. She appears to have been a tractable client. Her character was so assailed by her husband as to undoubtedly give her great dis-

tress and anxiety.   Respondent had been engaged in the practice of his profession in the city of Chicago six years before he was employed by her,—time enough for sufficient experience to enable him to know that his dealings with his clients and with the courts should be so open and straightforward as to leave no reasonable room for criticism.

If the decision of this case involved only a determination of whether respondent received more money than his services were worth the decision would have to be in his favor, but if his contention that Mrs. Heisler authorized him to collect all alimony paid and appply it on his fees be accepted as correct, we think the evidence showed in him such a lack of moral sense and proper appreciation of his relations and duty toward the court in which the litigation was pending as to render him unworthy to be further allowed to practice his profession.  After he had procured the order from Mrs. Heisler directing the clerk to pay him the alimony money he went into court four different times, April, June, July and December, 1906, to enforce payment of the weekly allowance by contempt proceedings.   On each of these occasions he presented affidavits of Mrs. Heisler in which it was stated that the money was desired and needed for the support of herself and children, and at the same time, notwithstanding respondent says he was to have the money he was seeking to collect to apply on his fees, he verbally stated to the court that Mrs. Heisler and her children needed the money for their support.   The allowance of alimony *pendente lite* had been made by the court for the benefit of Mrs. Heisler and her children and not for solicitor's fees.   Twenty dollars was allowed for that purpose and paid to respondent.   These litigants were both poor, and this was considered by the court in fixing the allowances made.   It was evidently the view of the court that the amounts fixed to be paid by Frederick Heisler as solicitor's fees and alimony were as much as he was able to pay for those purposes pending the suit.   If it had been thought

proper for him to pay a larger sum for solicitor's fees it is
to be presumed the court would have so ordered. If it had
been called to the attention of the court that after appro-
priating the $20 respondent had an agreement with Mrs.
Heisler by which he was to have the weekly payments of ali-
mony also to apply on his fees, it would have been the duty
of the court to set aside the order for the payment of ali-
mony. Having allowed Mrs. Heisler all the solicitor's fees
the court thought her entitled to under the circumstances,
it would not have been tolerated that the alimony should
also be appropriated for that purpose. This must have been
understood by respondent, for he repeatedly, by affidavits
presented and verbal statements made by him to the court,
represented that the alimony was wanted for the support of
Mrs. Heisler and her children, and the aid of the strong
arm of the law was asked to force Frederick Heisler to pay
this money so that his wife and children might have it to
live on. It is of absolutely no consequence whether respond-
ent rendered services worth more than he received pay for
or whether the contract of employment was as claimed by
him. The damaging fact is that he concealed the truth and
by false representations imposed upon the court, of which
he was an officer, in order that he might profit a few dollars
thereby. Nor is the offense mitigated by the fact that he
paid Mrs. Heisler a few dollars of the money thus collected.
Respondent testified that notwithstanding Mrs. Heisler au-
thorized him to keep all the alimony money collected by
him, he paid her $12 out of it because she was in need and
he did not think "she could afford to lose it all." It was not
the purpose of making the order for the payment of the ali-
mony that respondent should collect it and dole out to Mrs.
Heisler small sums when in his judgment she needed it. If
he had wanted more fees or more money to pay the ex-
penses of the litigation he knew the only proper way to
procure it was to ask the court for an order on Frederick
Heisler to pay it. If he had been too poor to pay more it is

not probable that the court would have permitted the money paid for the support of Mrs. Heisler and children to be absorbed for those purposes.

We can take no other view of the finding of facts by the commissioner, which is fully sustained by the evidence, in relation to the conduct of respondent in collecting and appropriating this money, to say nothing of his previous immoral conduct as shown by his plea of guilty to the indictment in the criminal court and the judgment and sentence against him thereon, than that it clearly convicts him of conduct which cannot be passed over with a mere censure, but makes it our duty to strike his name from the roll of attorneys. We are not unmindful of the serious consequences of such action to respondent and that the proof to justify it must be clear and satisfactory. (*People* v. *Thornton*, 228 Ill. 42; *People* v. *Matthews*, 217 id. 94.) We can see no difference in moral turpitude between fraud and misrepresentation in procuring an original order for the payment of alimony, and fraud and misrepresentation in enforcing payment upon an order already made. In *People* v. *Leary*, 84 Ill. 190, we held the procuring of an order for the payment of alimony upon a paper purporting to have been sworn to by the defendant, the wife of complainant, but which, in fact, she did not swear to, her name having been signed to it by her solicitor while she was ill, justified the disbarment of the solicitor. In that case it was said (p. 91) : "A motive for his conduct may be found in the fact he had procured Mrs. Powers, while in her confinement, to sign a paper authorizing him to receive any money which the court might allow her in the progress of the cause." In *People* v. *Pickler*, 186 Ill. 64, it was held that a lawyer who induces a court to allow appeals upon bonds he knows to be worthless or fictitious is guilty of such misconduct as to warrant his disbarment. In *People* v. *Beattie*, 137 Ill. 553, it was said (p. 574) : "The lawyer's duty is of a double character. He owes to his client the duty of

fidelity, but he also owes the duty of good faith and honorable dealing to the judicial tribunals before whom he practices his profession. He is an officer of the court—a minister in the temple of justice. His high vocation is to correctly inform the court upon the law and the facts of the case and to aid it in doing justice and arriving at correct conclusions. He violates his oath of office when he resorts to deception or permits his clients to do so." In *People* v. *Macauley,* 230 Ill. 208, it was said (p. 213) : "The standard of personal and professional integrity which should be applied to persons admitted to practice law in the courts is not satisfied by such conduct as merely enables them to escape the penalties of the criminal law."

This court has always held that a high sense of personal and professional integrity must be observed by members of the profession, not only toward clients but toward the courts in which they practice. They are a part of the machinery of the law for the administration of justice, and it is indispensable that courts shall in a large measure be able to rely upon their good faith and fair dealing. It is no hardship to make this requirement, and it cannot be relaxed without great detriment to the profession and to the proper administration of justice. Men who cannot conform to the standard fixed must employ their talents in other fields than the legal profession. The proof of respondent's misconduct in the respects mentioned meets the requirements of the rules laid down in the previous decisions of this court, and the commissioner should have recommended disbarment upon the facts found proven.

A judgment will therefore be entered that the rule be made absolute and respondent's name stricken from the roll of attorneys of this court. *Rule made absolute.*