(No. 20235.—

THE PEOPLE *ex rel.* The Chicago Bar Association, Relator,
*vs.* JOHN J. GORMAN, Respondent.

*Opinion filed December 17, 1931.*

INFORMATION to disbar.

JOHN L. FOGLE, for relator.

JOHN J. GORMAN, *pro se.*

Mr. JUSTICE HEARD delivered the opinion of the court:

At the April, 1930, term of this court, by leave of court
first had and obtained, an information was filed by the
People of the State of Illinois, on the relation of the Chi-
cago Bar Association, against John J. Gorman, respondent,
charging him with malfeasance in his office as attorney at
law of this court and praying for his disbarment. At the
June, 1930, term, respondent filed his answer, and the cause
was referred to a commissioner to take proofs and to report
his findings. The proofs were taken, the master's report

recommending that respondent be disbarred, and respondent's exceptions thereto, were filed in this court. The cause was submitted on briefs and arguments of the respective parties and taken under advisement at the October, 1931, term.

Upon the hearing before the commissioner it was stipulated by the parties that the following statement of facts should be taken and considered by the commissioner and this court as having been duly proved:

"1. That the respondent, John J. Gorman, was duly admitted and licensed as an attorney and counselor of the State of Illinois on the seventh day of October, A. D. 1914, and that he is now, and has been since said date, engaged in the practice of the law in the city of Chicago, in said State of Illinois.

"2. That for at least three years prior to April, 1927, William McAndrew was superintendent of schools of the city of Chicago; that in the month of April, 1927, William Hale Thompson was elected and on the 10th day of April said William Hale Thompson was installed in the office of mayor of said city; that said Thompson previous to his election, and after, publicly avowed his intention to accomplish the removal of said McAndrew as such superintendent of schools of the said city of Chicago; that on, to-wit, the 29th day of August, A. D. 1927, there was instituted before the board of education proceedings for the removal of said superintendent of schools; that the charges against said superintendent were as shown by copies thereof which have or are to be duly offered in evidence in this cause.

"3. That said respondent, after the installation of said Thompson as such mayor, and on, to-wit, the 14th day of April, 1927, was caused to be appointed special assistant corporation counsel of the city of Chicago and was by said mayor caused to be assigned to the duty of examining and reading the American histories then being used in the Chicago public schools for the purpose of making a report

thereon as a part of the said respondent's duties as such special assistant corporation counsel.

"4. That at said time, and prior thereto, there was in use in said public schools of the said city of Chicago and being studied by the pupils of said schools, a work on American history the author of which was Dr. David S. Muzzey; that after spending about five months in the study of the matters to which said respondent was assigned, as aforesaid, said respondent, on or about August 24, 1927, caused to be sent to the said mayor a report on the Muzzey history and signed and transmitted therewith a letter bearing said date, which said letter is shown herein as respondent's exhibit No. 13.

"6. That when appearing before the committee on grievances of the relator, as hereinafter set forth, and on or about December 26, 1929, said respondent stated to said committee that at the time of the presentation of said letter and said report to the said mayor, he, said respondent, had not read the 1920 and the 1925 editions of Muzzey's history which were then in use in the public schools but had read the 1927 edition of said history, which said edition was not then in use in said public schools.

"7. That thereafter, in October, 1927, on the hearing before the said board of education on the charges presented against said William McAndrew, said respondent was a voluntary witness; that previous to the time said respondent became a witness on said trial said respondent prepared a statement from which questions were to be propounded to him when he should be interrogated as a witness in said matter, which said statement said respondent delivered, or caused to be delivered, to the counsel appearing against said McAndrew at said hearing.

"8. That upon becoming a witness, as aforesaid, in said hearing, said board of education administered, or caused to be administered, to said respondent an oath in the usual form; that it is the contention of said respondent, which

must be settled as a matter of law by the commissioner or the court, that said board was not empowered, under the law, to administer oaths.

"9. That after being so sworn said respondent testified, among other things, as follows: 'That he investigated the history text books of the Chicago public schools from April until October, 1927; that one of the books supplied to him was Muzzey's 'American People,' 1927 edition, which was sent him instead of Muzzey's 'American History,' 1925 edition; that later he secured the earlier editions and examined both of them; that after such examination he had come to the conclusion that they were unpatriotic text books and utterly unfit to put into the hands of the school children of Chicago.'

"10. That as such witness on said trial said respondent was asked the following question: 'Now, I ask you whether or not you found in this—found this in the book: 'The capital of Massachusetts was a center of vulgar sedition, strewn with brickbats and broken glass, where his enemies went about clothed in homespun and his friends in tar and feathers?' that to said question said respondent answered, 'Yes, sir;' that as such witness on said trial said respondent was asked the following question: 'Did you find there that Muzzey characterized the Continental Congress as 'a collection of quarrelsome, pettifogging lawyers and mechanics?' that to said question said respondent answered, 'Yes, sir;' that as such witness on said trial said respondent was asked the following question: "Did you find language in there to the effect that 'Washington was a tyrant, a dictator, a despot,' and he was called a step-father of his country?' that to said question said respondent answered, 'Yes, sir;' that as such witness on said trial said respondent was asked the following question: 'Before you go into details, Congressman, what was the effect produced on your mind as to the attitude of Muzzey in the treatment of the story of the colonists and the revolution?' that to said question said

respondent answered as follows: 'Well, I was amazed to find that the American Revolution was treated in the manner that Muzzey treats it—giving the pro-British view of it. His text books contain numerous distortions, and where it would state facts it would frequently minimize their importance, and the text is filled with deletions. I would rather say from the text that there are omissions of many vital events and vital characters pertaining to the Revolutionary War that were always taught, for a period of over a hundred years, in the schools of our country by the patriotic text writers of previous times.'

"11. That said respondent also on said trial, as a part of his evidence as such witness, then and there read the letter of August 24, 1927, and the report transmitted therewith, hereinbefore set out, as a part of his evidence on the said matter before said board of education, which was done by request of counsel in said matter.

"12. That thereafter said Dr. David S. Muzzey instituted in the District Court of the United States for the Northern District of Illinois, eastern division, a libel suit against respondent, claiming damages in the sum of $100,-000 against said respondent for the publication of the aforesaid alleged false allegations and statements; that said respondent duly appeared in said cause and filed certain pleas; that while said suit was pending, on or about the 11th day of October, A. D. 1929, said respondent signed and caused to be delivered to said Muzzey the following letter:

" 'CHICAGO, *October 11, 1929.*
" '*Dr. David Saville Muzzey, Columbia University, New York City, N. Y.*

" 'DEAR SIR—I write to retract the charges that I made concerning your text books in use in the public schools. As you have already been advised, the letter which I addressed to mayor Thompson dated August 24, 1927, criticising your text book 'American History,' was not written by me but was prepared entirely by another person. I had not at the time read your book to which this letter referred, and I made the mistake of signing the letter because

of the confidence that I then had in this person and his statements. I have since found that I was misled in so doing.

"'I greatly regret if in this letter to the mayor, in my testimony before the board of education at the McAndrew trial, or in any other statement made by me, I have seemed to reflect in any way upon your motives in writing these text books or upon your character as a patriotic citizen, for I now realize that I had no basis for casting such aspersions. A careful study of your text books discloses nothing which I would criticise and I consider the books well adapted to use in the public schools.

"'You are at liberty to make this letter public and to use it in any way that you may see fit so as to remove, so far as possible, any wrong impression that may have gone abroad from anything that I have said or done.

(Signed) JOHN J. GORMAN.'

—that thereupon, on the receipt of said letter, said libel suit was dismissed.

"13. That thereafter, and on or about the 18th day of October, said respondent wrote and caused to be delivered to H. Wallace Caldwell, the then president of the said board of education, a letter which is in words and figures following, to-wit:

"'October 18, 1929.

"'Honorable H. Wallace Caldwell, President Board of Education, Steuben Building, Chicago, Illinois:

"'DEAR PRESIDENT CALDWELL—When I made a retraction to Professor Muzzey I foresaw that it might be misunderstood by some members of the public, but I could not visualize all the erroneous deductions which have since been drawn from it. I was willing to endure criticism, because that is the common lot of the one who is on the short end of an enterprise, particularly when in good conscience he attempts to right a wrong he has committed; but when Mr. Mullenbach, through a resolution introduced at the last meeting of the board of education, speaks about perjury and an inquiry thereinto, it not only shows how uninformed is the public state of mind concerning the whole controversy, but it signalizes the advent of the hour when I should throw the light of clarity upon the whole confused situation.

"'At the outset I wish to state as positively as the fact can be stated, that my retraction to Professor Muzzey was not a repudiation of the testimony I gave in the trial of former superintendent William McAndrew.

"'The puzzled state in which the controversy revolved is due to the confounding of two separate and distinct matters: The first,

my report to the mayor; and the second, my testimony in the McAndrew trial. My report to the mayor consisted of a detailed criticism of seven histories, pointing out objections to them by page and section numbers, including Muzzey's 1927 'History of the American People.' No part of that report was included in Professor Muzzey's suit against me. No critic, no newspaper or other member of the public has ever challenged the accuracy of that report. Accompanying that report was a letter addressed to the mayor, dictated by the late Charles Grant Miller, in order to set out in a brief way some of the objections to certain histories, because, as he stated, no one would take the time to go through my voluminous report. The basis of Professor Muzzey's suit against me was some of the statements contained in that letter pertaining to Muzzey's 'American History,' editions of 1920 and 1925, which at the time the letter was dictated I had not read, and which I so stated in my testimony given in the McAndrew trial. Between the date of the writing of that letter and the trial of former superintendent McAndrew I did read the 1920 and 1925 editions of Muzzey's 'American History' and made them part of my report which was read in the testimony given by me at the trial. My testimony in the McAndrew trial referred to about a dozen histories, including Professor Muzzey's.

" 'What I have retracted are observations I made at the McAndrew trial when I testified as a witness. Those observations, made in good faith and in a firm belief of their verity, cast aspersions upon the motives of Professor Muzzey in writing the 1920 edition of his text book. Although I believed those observations to be true at the time I made them, relying upon published information obtained from several sources as well as upon my own interpretation of Professor Muzzey's history, they should not have been uttered, because it was my duty as a witness merely to point out objections to the histories and leave the inferences to be drawn therefrom to the members of the board of education, who sat as judges. I should not have said that those histories were pro-British or intimated that they were written from dishonorable motives, although I entertained such a belief. It was the province of the board of education to determine whether or not the facts testified to proved the histories to be tainted. However, because I did volunteer my opinion, and afterwards, upon a more thorough investigation, retracted that opinion, it does not vitiate my testimony and stamp it as perjury. If Mr. Mullenbach had first informed himself of the definition of perjury, and, secondly, read my testimony in the light of that definition, he would not have introduced that sweeping resolution. I felt that Professor Muzzey had been done an injury and that he was entitled to all the redress I could possibly give to him. Therefore I gave him a complete re-

traction—one entirely beyond the scope of the allegations in his suit against me. I am perfectly willing that he should have this retraction, but if Mr. Mullenbach desires to open up the whole subject anew, the retraction will then necessarily be reduced to lesser proportions.

"'The only phase of Mr. Mullenbach's resolution I am interested in is that to which I have already adverted. However, it is pertinent to inquire of him if he is under the impression that of all the witnesses who testified at the McAndrew trial, including district superintendents, principals and teachers—members of McAndrew's own official family—only my testimony was competent. When he answers that simple question then he might be asked if my testimony as to nearly a dozen other histories has remained unchallenged for its accuracy, didn't that testimony have some probative value?

"'In conclusion, let me reiterate that I gave no perjured testimony in the McAndrew trial, and if the committee of the whole is going into this matter I request that I be permitted to appear before the committee. "'Very truly your,
 (Signed) JOHN J. GORMAN.'

"14. That thereafter, and on, to-wit, the 21st day of December, A. D. 1929, the committee on grievances of the Chicago Bar Association, the relator, caused to be sent to respondent a letter in words and figures following, to-wit:

"'December 21, 1929.
"'John J. Gorman, Esq., 1801, #111 W. Washington St., Chicago, Illinois:
"'DEAR SIR—The board of managers of the Chicago Bar Association has referred to the committee on grievances the matter of your conduct in the McAndrew case. In the board's letter the following statement is made: 'At a meeting of the board of managers held on October 15th attention was called to the conduct of John J. Gorman, a member of the Chicago bar, as disclosed by a retraction by him of certain charges which he had made against Dr. David S. Muzzey and a volume of American history of which he was the author, these charges having received wide publicity at the time that they were made. In view of Mr. Gorman's retraction the board felt that the matter should receive the attention of the committee on grievances and therefore referred the matter to the committee.' The committee has secured a transcript of the testimony and a memorandum of the court files and is now ready to undertake the hearing of any evidence which would be material for the purpose of formulating a report. The committee has di-

rected me to advise you of the foregoing and to say that it has set the matter for hearing at its regular meeting on Thursday evening, December 26, 1929. The committee will be very glad to hear any evidence or documents which you might wish to have it consider in the matter. The hearing will be held at the Chicago Bar Association rooms, 20th floor, Burnham building, at 160 North LaSalle street, at 7:30 P. M. "'Very truly yours,
(Signed) JOHN L. FOGLE.'

"15. That thereafter, and on, to-wit, the 23d day of December, A. D. 1929, said respondent forwarded to said committee on grievances a letter in words and figures following, to-wit:

"'December 23, 1929.

"'Mr. John L. Fogle, Attorney,
 The Chicago Bar Association, 160 North LaSalle Street, Chicago, Illinois:

"'DEAR MR. FOGLE—In this morning's mail I received your letter of the 21st inst., which is not clear to me in respect to the following sentence: 'The committee will be very glad to hear any evidence or documents which you might wish to have it consider in the matter.' Does that sentence import that I can appear and give testimony relative to Mr. Muzzey's histories? If so, I desire the opportunity to take up seriatim the three histories of Mr. Muzzey about which I testified in the McAndrew trial, viz., 'American History,' editions of 1920 and 1925, and 'History of the American People,' edition of 1927, for the purpose of showing the following facts:

"'1. The slurring of patriots, statesmen, events and the courts.

"'2. The omission of numerous vital characters and events.

"'3. Changes made in revised editions under pressure of criticism directed against the 1920 edition.

"'4. My interpretation of these histories as pro-British and un-American as compared with text books formerly in use in the Chicago public schools.

"'In support of my interpretation I desire to introduce the following documents:

"'Brief by Judge Wallace McCamant, of Portland, Oregon, formerly of the Supreme Court of Oregon, and president of the Sons of the American Revolution; articles in the Constitutional Review against Muzzey's histories.

"'Statement against Muzzey's histories contained in the pamphlet of the Sons of the American Revolution; report of the District of Columbia board of education, Piney Branch Citizens' Association, against Muzzey's histories.

" 'Report of Investigation of Pro-British Text Books in use in the Public Schools of New York, by David Hirschfield.

" 'Articles in the *Daily Courier* of Ottumwa, Iowa, against Muzzey's histories, particularly the article of March 2, 1919, entitled, 'Get a New History.'

" 'Charges against distorted histories made on the floor of the city council of Boston, at which time Muzzey's history was one of the histories under investigation.

" ' "Treason to American Tradition,' 'Propaganda in School Histories,' and the 'Poisoned Loving Cup,' written by the late Charles Grant Miller, and miscellaneous articles from newspapers.

" 'In order to give me an opportunity to present the foregoing matters in detail a hearing of at least two days will be required, but I assure you that I will proceed as rapidly as I can. My retraction to Mr. Muzzey was written by his attorneys and signed by me under protest upon the advice of my counsel. It is a far too liberal retraction, and I expect to show to your committee that Mr. Muzzey's histories, as compared with other available school histories, are, as I charged in the McAndrew trial, unfit for use in the public schools of Chicago.

" 'Very truly yours,
(Signed) JOHN J. GORMAN.'

" 'P. S. This letter is being delivered to you by messenger on account of the seasonal delay of the mails.'

"17. It is further stipulated that copies of the 1920, 1925 and 1927 editions of the histories written by David S. Muzzey may be considered in evidence herein as if the same were set out in the stipulation."

Respondent testified in his own behalf that after Muzzey filed his suit against him he procured the services of Jacob E. Dittus, an attorney, relying upon a promise that it would not cost him anything to defend the case, and that witnesses would be brought to Chicago for the trial of the case and these witnesses would be experts who had theretofore examined and criticised the Muzzey histories; that when it became known that the promise of help would not be forthcoming and that he would have to pay the expenses of the trial himself he personally took over the defense of the suit and prepared some pleadings in defense. In his brief and argument he states with reference to the signing

of the retraction as follows: "Shortly before the date that the cause was coming on for trial, within probably ten days or two weeks thereof, the attorneys for Mr. Muzzey made overtures to Mr. Dittus to the effect that Mr. Muzzey would have the cause dismissed without costs to the respondent if the respondent would make a retraction to Mr. Muzzey. Mr. Dittus strongly urged the respondent to make the said retraction, whereupon respondent agreed to do so, thinking that he himself would write the retraction. The counsel for Mr. Muzzey, Judge Foster, invited the respondent and Mr. Dittus to his office, and upon their arrival there the respondent was handed a typewritten retraction prepared by Judge Foster and told that he would have to sign it without any change being made in it. The respondent refused to sign the retraction unless he were permitted to remove a sentence therefrom which did not meet the approval of the respondent, to-wit: 'A careful study of your text books discloses nothing which I would criticise and I consider the books well adapted for use in the public schools.' Judge Foster, however, refused to allow that paragraph to be stricken out or any other change to be made in the retraction, and the respondent was so adamant in his refusal to sign it as it was written that Judge Foster suggested that he would step into another office so that the respondent could discuss the matter privately with Mr. Dittus. During the absence of Judge Foster from the room Mr. Dittus strongly urged the respondent to accept and sign the retraction in its then form, to which urging the respondent acquiesced and signed the retraction. Thereupon the suit was dismissed and copies of the retraction were given to the press by Mr. Muzzey's attorney."

Respondent claims that the clerk of the board of education had no legal right to administer an oath to him on the McAndrew trial, and that therefore what he there stated is not to be regarded as being sworn testimony. He also claims that his statements with reference to the Muzzey

history as not being proper for use in the public schools were justified, and copies of "A History of the American People, by David Saville Muzzey," published in 1927, "An American History, by David Saville Muzzey, Ph.D.," published in 1925, "An American History, by David Saville Muzzey, Ph.D.," published in 1920, and a criticism thereof entitled "The Poisoned Loving Cup, by Charles Grant Miller," published in 1928, have been returned by the commissioner with his report for our inspection. He also claims that in his letter to the mayor and in his testimony at the McAndrew trial he was justified in quoting excerpts from Muzzey's history without giving the entire paragraph.

Although we have carefully examined the entire record, including the four books above mentioned, in the view which we take of this case it is not necessary to decide any of these disputed questions. We prefer to base the decision solely on the facts contained in the stipulation signed by respondent and in his brief and argument filed *pro se* in this case. Even if we assume that the facts stated in his report to the mayor and his testimony before the board of education that the histories were not fitted for use in the public schools were true and that the statement in the retraction signed by him when called upon to respond in damages in the libel suit, "a careful study of your text books discloses nothing which I would criticise and I consider the books well adapted to use in the public schools," are false, yet by the record made for himself by his statement of his charges, his retraction thereof, his partial repudiation of his retraction in his letter to Caldwell after the dismissal of the libel suit and by his entire repudiation of it now, he has demonstrated that in the performance of his duty as an officer of this court he is shifty, unreliable, untruthful, untrustworthy and unfitted for service in the high and honorable office of an attorney and counselor at law of this court. In *People v. Czarnecki,* 268 Ill. 278, it is fittingly said: "Attorneys at law are officers of this court. As such it is their duty

to aid in the establishment of truth and the due administration of justice. (*People* v. *Moutray*, 166 Ill. 630.) When a license is granted to one to practice law by this court he assumes grave responsibilities, which only those worthy of trust and confidence and possessed of absolute fidelity and honesty should bear. Confidences are reposed in them; interests of great magnitude, and even the life, liberty and character of their fellow-men, are entrusted to their care. (*People* v. *Ford*, 54 Ill. 520.) A license granted by this court to practice is a guaranty that, so far as this court is advised, the person holding such license is a fit and proper person to assume the responsibilities, to enjoy and safe-keep the confidences of others, and to aid and assist them in the care and management of their legal business and affairs. (*People* v. *Shirley*, 214 Ill. 142; *People* v. *Payson*, 215 id. 476.) In maintaining this high standard both the people and the courts are alike interested, (*People* v. *Palmer*, 61 Ill. 255,) and to the extent that this court has guaranteed the fitness of one to assume these responsibilities it possesses the inherent power to recall its certificate whenever it is clearly proven that the bearer is no longer worthy of being entrusted with those trusts and confidences the license indicated he was worthy to assume."

Unprofessional conduct is that which violates the rules or ethical code of a profession or such conduct which is unbecoming a member of a profession in good standing. (*People* v. *Berezniak*, 292 Ill. 305.) The standard of personal and professional integrity which should be applied to persons admitted to practice law in the courts is not satisfied by such conduct as merely enables them to escape the penalties of the criminal law. The statute and the rules of this court require good moral character as additional precedent to a license as an attorney. (*People* v. *Macauley*, 230 Ill. 208.) Respect for law and for the administration of justice by the officers of our courts is necessarily fundamental in our form of government. In *People* v. *Barrios*,

237 Ill. 527, it is said: "This court has always held that a high sense of personal and professional integrity must be observed by members of the profession, not only toward, clients but toward the courts in which they practice. They are a part of the machinery of the law for the administration of justice, and it is indispensable that courts shall in a large measure be able to rely upon their good faith and fair dealing. It is no hardship to make this requirement, and it can not be relaxed without great detriment to the profession and to the proper administration of justice. Men who can not conform to the standard fixed must employ their talents in other fields than the legal profession."

By the facts stated in his written stipulation and his brief and argument herein respondent has shown that he does not conform to the standard fixed for the practice of the legal profession. A judgment will therefore be entered that the rule be made absolute and respondent's name stricken from the roll of attorneys of this court.

*Rule made absolute.*