(No. 21694.—

THE PEOPLE *ex rel.* The Chicago Bar Association, Relator, *vs.* JUSTUS CHANCELLOR, JR., Respondent.

*Opinion filed October 17, 1934.*

FARTHING and SHAW, JJ., dissenting.

JOHN L. FOGLE, for relator.

JUSTUS CHANCELLOR, for respondent.

Per CURIAM: Pursuant to leave granted, an information in the name of the People of the State was filed in this court charging Justus Chancellor, Jr., with unprofessional conduct as an attorney and counselor at law. The respondent filed his answer to the information and the cause was referred to a commissioner who reported the evi-

dence with his conclusion that the respondent should be suspended from the practice of law for a period to be fixed by the court. The respondent subsequently made restitution of the money which, it was charged, he had collected for a client and appropriated to his own use, and the commissioner by a supplemental report recommended that the information be dismissed and the rule discharged. To this report the relator excepted and upon the record thus made the cause is submitted.

Justus Chancellor, Jr., the respondent, was admitted to practice law in this State in October, 1920, and thereafter practiced his profession in the city of Chicago. He first represented the American Terra Cotta and Ceramic Company, now the American Terra Cotta Company, in 1921, and two years later became its general counsel. The company delivered terra cotta to Radigan Bros. for use in the construction of a store building at 673 Broadway, Gary, Indiana. The price, $2645, was not paid and the respondent was requested to enforce payment of the claim by legal process. He forwarded the claim to certain attorneys, who were his correspondents at Gary. They filed a notice of claim for lien and a suit to foreclose the lien in the superior court of Lake county, Indiana. The defendants offered to pay the amount of the claim and one-half of the costs and attorneys' fees in settlement. The offer was transmitted to the respondent; he communicated it to the claimant and the offer was accepted. Shortly thereafter the attorneys at Gary collected $2804.42. They deducted $23.84, the costs they had advanced, and $295 for their fees and remitted the remainder, $2485.58, to the respondent. They also sent him a check for $98.34, one-third of the fees charged.

The evidence introduced by the relator shows that the respondent did not inform his client of the settlement but represented to George A. Berry, Jr., an officer of the company, that Radigan Bros. had paid $1000 on account; that

owing to their adverse financial condition, they had been unable to consummate the settlement proposed, and that he, the respondent, would endeavor to effect the collection of the remainder of the claim. The respondent mailed his check for $1000 to the company. Thereafter, the company repeatedly sought reports upon the status of the claim. Early in May, 1931, about three years after the respondent had received the claim for collection, the company requested the return of the files. On May 11, the respondent addressed the company stating that about four years before he had been employed by it as counsel to render services of a legal character locally for the compensation of $200 per month; that a separate agreement had been effected respecting services to be rendered outside of the city of Chicago; that he accepted the claim against Radigan Bros. on the basis of retaining one-third of the amount collected as his compensation; that the suit against them could be tried without taking depositions which theretofore he had believed necessary and that, as a matter of justice, he should be permitted to settle the pending suit.

The receipt of the foregoing letter induced the company to send G. Donald Whitehouse, an employee who had been admitted to the bar, to investigate. He proceeded to Crown Point, Indiana, the county seat of Lake county, and thence to Gary where he ascertained that the suit in the superior court of that county had been settled and that the proceeds had been remitted to the respondent in January of the preceding year. Shortly after his return to Chicago, Whitehouse, accompanied by Berry, called upon the respondent at his office and requested an accounting of the proceeds of the claim collected from Radigan Bros. The respondent admitted that he had received the money and used it; he stated that he would waive all fees for services rendered in respect of the particular claim as well as all other matters and he promised early in the following week to mail the company his check for the remainder of the

money he had collected. After the lapse of a considerable period, he sent the company two checks, one for $400 on October 10, and the other for $75 on October 15, 1931. The third check for $50, mailed on January 16, 1932, was returned by the bank on which it was drawn for the want of sufficient funds to the drawer's credit.

The respondent testified that, with respect to the claim against Radigan Bros., the company submitted two files to him, one of which was marked "#2742, Arthur Orbesen" and the other "#27368, Radigan Bros."; that the first of these files was sent to him in January or February, 1928, and the second in May of the same year, and that both related to the same account; that an employee in his office had charge of the file marked "Radigan Bros." and conducted the correspondence concerning it; that certain letters written by the employee in charge of that file and placed before the respondent for his signature contained statements which he assumed to be correct but which proved to be erroneous and that he was, in consequence, led to believe that the claim against Radigan Bros. was still pending while the one against Orbesen was settled. The respondent further testified that he had performed services for the company during a number of years under a verbal contract with its secretary and treasurer; that the company remained indebted to him but that he could not prepare his account at the time because certain of his records were missing; that when he received the check from the attorneys in Gary, he informed Berry of the fact and that he would credit the company with the money collected; that Berry told him the company was in need of money and that he thereupon gave him a check for $1000 which seemed to satisfy him; that upon Berry's subsequent suggestion of a proper adjustment of the account between the company and the respondent, the latter agreed to remit the remainder of the money he had collected from Radigan Bros. but that he could not do so immediately because the

bank in which the money was deposited had closed; and that Berry told him the company would no longer need the services of a general counsel since he and Whitehouse were attorneys and could perform the legal services required. The respondent denied that he admitted to Berry and Whitehouse that he used for his own purposes any money belonging to the company.

The primary contention of the respondent is that the evidence does not show that he failed to account for the money he collected and that he converted it to his own use. The respondent received from his correspondents in Gary, in January, 1930, $2485.58 in settlement of the American Terra Cotta Company's claim against Radigan Bros. Of this sum he remitted $1000 to his client. Repeated requests for reports upon the status of the claim followed until early in May, 1931, the return of the files was demanded. On the eleventh of the same month, the respondent, in answer to the demand, and after references to claimed arrangements concerning legal services within and without the city of Chicago, wrote his client that the suit against Radigan Bros. could be tried without depositions and that, in justice to him, he should be permitted to conclude it. An investigation followed which disclosed that the suit had been settled and the proceeds, less the fees of the local attorneys, had been remitted to the respondent upwards of fifteen months before the letter of May 11, 1931, was written. A conference between Berry and Whitehouse and the respondent ensued. This conference resulted, after the lapse of several months, in two remittances by the respondent to the company, one of $400 on October 10 and the other of $75 on October 15, 1931. Against this recital of uncontroverted facts established by the evidence, the respondent's claim of want of knowledge and hence of responsibility for erroneous statements in letters which, although signed by him, were actually written by an employee in charge of the particular file, is unavail-

ing. The repeated requests of the client for reports during the period of more than a year would have dispelled any such misapprehension of fact as is urged. The first contention of the respondent, it necessarily follows, is untenable.

The other contention of the respondent is that having made restitution ultimately, the rule should be discharged. The wrongful conversion by an attorney at law of money or property in his possession belonging to a client is a violation of his duties as an attorney and requires discipline. The fact that restitution was made after complaint of misconduct will not absolve an attorney nor preclude inquiry into the professional propriety of his acts prior to and in connection with the settlement. (*In re Zahn,* 356 Ill. 283; *People* v. *Hansen,* 352 id. 144; *People* v. *Grusd,* 318 id. 44; *People* v. *Chamberlain,* 242 id. 260). The weight to which restitution is entitled must be determined by the facts in each case. *People* v. *Grusd, supra.*

The respondent, according to his own testimony, has practiced law since his admission to the bar and he has had a varied experience. The present charge of unprofessional conduct appears to be the first and only one made against him. While previous good character will not be allowed to control the decision of the court in a disciplinary proceeding, it will be taken into consideration. (*People* v. *Johnson,* 332 Ill. 84; *People* v. *Donovan,* 288 id. 555). The members of the legal profession must maintain a high standard of integrity. *People* v. *Gorman,* 346 Ill. 432; *People* v. *Donovan,* 288 id. 555; *People* v. *Barrios,* 237 id. 527.

The circumstances disclosed by this record require the respondent's suspension. He will, therefore, be suspended from practice as an attorney and counselor at law within the State for the period of two years from the filing of this opinion.                    *Respondent suspended.*

JUSTICES FARTHING and SHAW, dissenting: We think the discipline imposed is not sufficient, in view of the seriousness of the misconduct shown.