THE PEOPLE *ex rel.* Chicago Bar Association, Relator, *vs.*
K. B. CZARNECKI, Respondent.

*Opinion filed April 22, 1915—Rehearing denied June 16, 1915.*

1. DISBARMENT—*it is the duty of attorneys to aid in establishing truth and administering justice.* Attorneys at law are officers of the court, and as such it is their duty to aid in the establishment of truth and the administration of justice.

2. SAME—*license to practice law is guaranty of licensee's fitness to assume responsibility.* A license to practice law is a guaranty by the Supreme Court that, so far as the court is advised, the licensee is a fit person to assume the responsibilities of his profession, receive and safe-keep the confidences of others and aid them in the care and management of their legal affairs.

3. SAME—*Supreme Court has inherent power to revoke license to practice law.* To the extent the Supreme Court has guaranteed the integrity and responsibility of a licensee to practice law it possesses inherent power to revoke the license whenever it is clearly proven that the licensee is no longer worthy of the trust and confidence the license indicates he was entitled to receive.

INFORMATION to disbar.

JOHN L. FOGLE, (ALBERT G. WELCH, of counsel,) for relator.

JOHN M. HESS, for respondent.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Respondent, K. B. Czarnecki, was admitted to the bar of this court and licensed to practice law in this State on June 6, 1895. On June 8, 1910, by leave of court an information was filed in this court on the relation of the Chicago Bar Association, charging respondent with unprofessional conduct in two interpleader suits instituted by him in the circuit court of Cook county as attorney for the Macierz Polska of the United States of North America, an organization of Polish people engaged in insuring its members, and the Polish Roman Catholic Union of North

America, a similar organization, growing out of death claims on two benefit certificates issued by them. The charges were that respondent obtained $350 from the Macierz Polska and $500 from the Polish Roman Catholic Union, the same to be paid by him into court in certain interpleader suits instituted by him as attorney for said societies and in their behalf for the purpose of having the rights of certain claimants to the funds determined, and that he failed and refused to pay the money so obtained into court or to re-pay the same to the respective societies on demand, but, on the contrary, appropriated and converted the same to his own use, by reason of which the respective interpleader suits were dismissed and both the societies and the beneficiaries put to long and expensive litigation without any material benefits to them.

The previous history of the cause in this court leading up to the disbarment of respondent is substantially as follows: Leave was granted to relator to file the information at the June term, 1910, and respondent was ruled to answer the same by the first day of the next October term. At the October term respondent appeared and filed certain exceptions to the information, which were overruled and an order entered requiring him to answer the information within five days, and the cause was continued to the December term, 1910. Respondent then answered the information, and at the December term the cause was referred to a special commissioner to take the evidence and make his report. The relator was to have thirty days in which to present the evidence in chief, the respondent sixty days in which to take his proofs, and the relator ten days in which to close its proofs, and the cause was continued to the April term. On June 21, 1911, the commissioner made his report, finding that the charges in the information had been proven and recommending that respondent's name be stricken from the roll of attorneys of this court. Instead of procuring and filing in this court a transcript of the evi-

dence, as is the practice in such cases when the respondent desires a review of the finding of facts made by the commissioner, together with his exceptions to such findings of the commissioner and the points and authorities in support thereof, (*People* v. *Gilbert,* 263 Ill. 85,) respondent took no further action in the matter until the convening of the ensuing October term of this court. He then appeared and on October 3, 1911, entered his motion to vacate the previous order entered referring the cause to the special commissioner and asked that the cause be referred to another commissioner to take the proofs and make his report. On the same day relator filed a motion for a rule on respondent to file exceptions to the commissioner's finding and report, if any, together with an abstract of record and his brief and argument, on or before twenty days before the first day of the next December term. Upon a consideration of the respective motions the motion of respondent was denied and the motion of relator was allowed and a rule entered accordingly. Respondent did not comply with the order but appeared at the December term and entered his motion to vacate and set aside the order entered *instanter.* No sufficient showing was made in support of this motion and it was denied. On the same day relator made a motion that respondent's name be stricken from the roll, in accordance with the report and recommendation of the commissioner, for the failure of respondent to comply with the terms of the previous order of October 3, 1911. At that time the evidence taken before the commissioner was not filed in this court and no exceptions had been filed to the commissioner's report, and no other course was open to this court but to grant the motion of relator. (*People* v. *Gilbert, supra,* and cases cited.) This was accordingly done, and an order was entered striking respondent's name from the roll of attorneys of this court. On April 18, 1914, respondent filed a petition in this court asking that the cause be re-opened and that he be re-instated as an at-

torney of this court. The ground upon which respondent asked a reconsideration of the matter was that he had misapprehended the effect of the rule entered on October 3, 1911, by reason of which mistake on his part he had been disbarred without the merits of his cause being considered and passed upon by the court. Upon a consideration of the matters set forth in the petition, and to the end that respondent might have the opportunity of fully presenting the merits of his cause, the petition was entertained upon condition that he furnish the court with a transcript of the evidence taken before the commissioner, together with an abstract of the same, on or before twenty days before the next term of court, and leave was granted to each party to file such points and authorities in support of their respective contentions as they might desire, in accordance with the rules of practice of this court. Respondent neglected to comply·with the conditions of the order pursuant to which the petition was entertained, but, on the contrary, appeared at the June term, 1914, and entered his motion for leave to file a typewritten abstract of the record *instanter*. At that time no transcript of the evidence taken before the commissioner was on file in this court and the motion was necessarily denied. On December 4, 1914, respondent renewed his motion to file a typewritten abstract of the evidence and asked that the cause be submitted for oral argument on the 12th day of December of that term. On the same day he filed what purported to be a transcript of the testimony taken before the commissioner, and upon the showing then made the motion for leave to file a typewritten abstract of the same was allowed and the motion to set the cause for oral argument denied for the reason that up to that time the cause had not been re-opened, and an order was entered re-opening the cause and setting the same for hearing on oral arguments, under the rules of this court, at the ensuing term.

· A subsequent examination of the record discloses that it is incomplete and does not contain a copy of the files in either of the two chancery cases, that 1286 pages of testimony taken before the commissioner purport to be abstracted in 59 typewritten pages of the abstract, and that in many instances the purported abstract is nothing more than an index to the testimony in the record. This is not such an abstract of the record as the rules of this court contemplate and require. (*Gibler* v. *City of Mattoon,* 167 Ill. 18; *Traeger* v. *Mutual Building Ass'n,* 189 id. 314; *Staude* v. *Schumacher,* 187 id. 187.) In the latter case it is said: "The rules of this court require the party bringing a cause into this court to furnish a complete abstract or abridgment of the record, properly indexed,—such an abstract as will fully present every error and exception relied upon, and sufficient for the examination and determination of the case without an examination of the written record." We have, however, carefully examined the evidence in the record, and are fully convinced that the findings of the commissioner are not only sustained by the evidence, but are the only proper conclusion he could have reached on the evidence before him.

. It appears from the evidence that since 1903 there has been a society known as the Macierz Polska of the United States of North America maintained among the Polish people of the city of Chicago and vicinity which maintained insurance features, in the nature of a fraternal mutual benefit insurance society, in connection with its organization. Sick and death benefit certificates were issued by it, and whenever it became necessary to raise funds to pay the obligations incurred on such certificates an assessment was levied on its members to raise funds for that purpose. The society was incorporated under the general Incorporation law of Illinois as a corporation not for pecuniary profit, but it neglected to have its articles of incorporation filed for record in the office of the recorder of deeds, as required by

law, and it is now claimed by respondent that it was doing an insurance business illegally. Respondent was a member of its board of directors, which position he filled for a year or more and until his successor was elected and qualified. He also acted as attorney for the society in various matters during that time. As a result of his connection with the society as member, officer and attorney it appears that he became familiar with the irregularity in the proceedings for the organization of the society. Whether or not he ever called the attention of the members or officers of the society to these matters is a disputed fact in this record, upon which we think the clear preponderance of the evidence is against respondent, who seems to have the idea that because, in some manner, the Macierz Polska was doing an insurance business contrary to law he is in no way answerable for funds of the society which were in his possession. It is not necessary to dwell on a large part of the respondent's argument which is devoted to this proposition. The society was not on trial. The only question was whether respondent had received money to which he was not entitled and had appropriated it. But however that may be, no question was ever raised as to the legality of the society's acts until the respondent attempted to avail himself of the situation in his effort to retain and appropriate to his own use the funds of the society paid to him under the following circumstances:

Some time prior to March 16, 1905, the society had issued a death benefit certificate to one Frank Szczukowski for $350, in which his wife was named as beneficiary. On March 16, 1905, by a written indorsement on the certificate, which seems to have been permitted by the rules of the society, Szczukowski directed that $200 of the amount should be paid to his parents, Joseph and Mary Ann Szczukowski, for his funeral expenses, $100 be paid to his daughter, Leokadia, and that $50 be paid to a church for masses. He died on September 3, 1905. Thereupon the

widow, as well as the others named in the certificate, made claim upon the society for the proceeds of the certificate. The officers of the society were unable to adjust the matter among the claimants and respondent·was consulted, who advised the filing of a bill of interpleader and the payment of the money into court. Acting on this advice a check was drawn to respondent's order on February 6, 1906, for $350, and a notation was made on the stub.that the money was for John A. Linn, the then clerk of the circuit court of Cook county. Respondent received and cashed the check and placed the proceeds to his personal account in the Chicago Savings Bank. On the following day a bill of interpleader was filed in the circuit court by respondent, as attorney for the society, and thereafter, at a meeting of the directors of the society held on February 12, 1906, it was reported, in the presence of respondent, that the money had been paid into court, and a paper was exhibited, with the name of John A. Linn written thereon, as evidence that the money had been paid as directed by the society. Summons was issued and delivered to and retained by respondent instead of being turned over to the sheriff to serve, and the same was not returned to the clerk of the court until a rule was entered on respondent to do so by the court, at the instance of the attorney for the parents. Nearly two years were allowed to elapse before the widow and guardian were ruled to answer, the rule finally being entered at the instance of the other claimants' attorneys, who had repeatedly, in the meantime, tried to get respondent to have the parties summoned into court and get the cause at issue. In the meantime the attorney for the parents commenced an action in the municipal court of Chicago against the society, and respondent procured an injunction to be issued out of the circuit court in the interpleader suit restraining a further prosecution of the suit in the municipal court. When the cause was finally reached on the hearing calendar, on January 13, 1909, respondent asked for a continu-

ance. The attorney representing the parents resisted the application because of the respondent's refusal to pay the money into court. The court thereupon ordered the money paid into court. Respondent refused to comply with the order, whereupon the bill of interpleader was dismissed by the court at the society's costs. Respondent then prayed an appeal from this order, which was allowed, conditioned upon filing a bond in thirty days, but he never perfected the appeal by filing the bond. Execution was then issued against the society on the decree for costs and the society was compelled to pay $8.20 in satisfaction of the execution. The service of this execution for costs upon the officers of the society was the first notice they had that the money paid respondent had not been paid into court as they had been informed it was and that the bill of interpleader had been dismissed at the society's costs. The society then employed another attorney, who made repeated demands upon respondent to return the $350, but respondent refused. After the dismissal of the bill of interpleader the attorney for the parents instituted another suit in the municipal court against the society and recovered a judgment against it for $225, which it was compelled to pay. It further appears that after this judgment was rendered against it the society made written demand upon the respondent to repay to it or its attorney the amount of money which he had previously received and still retained in his possession. The respondent refused to comply with this demand, and thereafter a suit in trover was brought in the municipal court and a judgment obtained against him in that court for $402, being the amount of $350 with interest from the time the respondent received it. The jury found in their verdict that the respondent had maliciously, willfully and intentionally, with intent to injure and defraud the society, converted to his own use the property of the society, amounting to $402. Respondent prayed an appeal from the judgment to this court, but he did not perfect his ap-

peal or pay the judgment until a *capias* was issued thereon and he was arrested and actually in the custody of the sheriff. He then paid the amount of the same to the sheriff under protest, in order to obtain his release from custody. That such conduct as this fully merits the action taken by this court is well established by the authorities. *People* v. *Pattison,* 241 Ill. 89; *People* v. *Chamberlain,* 242 id. 260; *People* v. *Payson,* 215 id. 476; *People* v. *Allen,* 244 id. 393.

Two excuses are offered by respondent for his conduct in the premises: First, that the society was not legally incorporated or authorized to do an insurance business, to which we have heretofore referred; and second, that he ultimately paid the money over to the person legally entitled to receive the same, before the bill of interpleader was dismissed. His proof offered in support of his first proposition is that he communicated the fact of the irregularities in the organization of the society to one or two officers, and that they desired him to procure such a finding in the decree in the interpleader suit that it could be used by them to show to the other members of the society as evidence that it was not violating the law in conducting or maintaining a beneficial insurance feature in connection with its organization. Respondent's testimony in this respect is flatly contradicted by the officers of the society to whom he claims to have communicated such information and is also inconsistent with his conduct and action in the interpleader suit. While no copy of the bill of interpleader filed by him is contained in the record or is before us, we understand from the other testimony in the record that the bill filed was but an ordinary bill of interpleader to compel different claimants to establish their respective claims to a fund the society was willing to pay, and it contained no allegations upon which any such relief as respondent claims was desired could possibly have been granted; and his permitting the bill to be dismissed when confronted with the

necessity of paying the funds into court, without attempting to obtain any such relief, is in irreconcilable conflict with his present testimony on this subject. But assuming that his version of the transaction is true, it affords no excuse for his conduct in the premises. If respondent obtained money of the society under a pretext that he would obtain a decree which he knew could not lawfully be obtained, and which he knew was proposed to be used for the purpose of enabling the officers of the society to exhibit it to others and to deceive them as to the legality of the business in which it was engaged, his conduct as an attorney in this respect is also reprehensible and deserving of censure.

With respect to the second defense interposed by the respondent, it appears that within a short time after the matter was placed in his hands the widow applied to the officers of the society for the money which she claimed was due her on the certificate and was directed to see respondent. It further appears she called on the respondent at his home, and he afterwards prepared, and had her execute, a petition to the probate court of Cook county to have Arthur Donahue appointed guardian of her minor child, and that Donahue was appointed and qualified as such guardian. The widow testified that she did not know Donahue, had never met him but once, and signed the petition for his appointment as guardian under the advice and at the instance of respondent. Respondent claims that in addition to acting as guardian for the minor Donahue was employed by the widow to act as her attorney in the matter of her claim against the society. If this be true, then Donahue stood in a confidential relation to the mother and child and was attempting to represent adverse and conflicting rights of claimants to the same fund. This condition was brought about through the procurement of respondent. Respondent further claims that after the matter had been pending for some time, and after Donahue had been ap-

pointed guardian for the minor child, he (respondent) became satisfied that the widow and minor child were entitled to the fund, and he thereupon paid the money to Donahue, as the attorney for the widow and minor child. Donahue testified that the $350 was paid to him before he was appointed guardian, and that he never saw or talked with the widow until after he was appointed guardian. The petition for letters of guardianship was filed in the probate court on July 8, 1909. In this Donahue is corroborated by the widow, who testified that she thought Czarnecki was her attorney and that the first talk she had with Donahue was in July, 1909. In support of respondent's version of the transaction, a purported receipt from Donahue to him, dated February 9, 1909, was introduced in evidence, which indicates that the money was paid to Donahue at least four months before he was employed in the case or had a semblance of right to receive this money for or in behalf of anyone. With respect to the payment of the money called for in the receipt, ($350,) both Donahue and respondent testify that the same was paid in cash. Donahue further testified that he carried this money in its original condition in his pocket for a period of approximately eleven months, at the expiration of which time he voluntarily paid it back to respondent, to be used in paying the judgment which the society had obtained against him in the municipal court. It further appears that Donahue never charged himself in the inventory with the money received from respondent, and that while he still had it in his possession he instituted a suit in the county court of Cook county for the minor, and that as such guardian he recovered two judgments against the society,—one by confession for $100, and another for $250, the only part of the claim that was contested. Donahue testified as a witness in that case and there swore the claim of the minor child had not then been paid. It is also clear from the evidence that respondent knew of this suit, and, if his present testimony is true, also knew that the

money had been paid to Donahue and that he then held his receipt for the same. Respondent never communicated this fact to the attorneys or to the officers of the society or produced or offered to produce the receipt in court in that trial. On the contrary, he stood by and permitted a judgment to be rendered against his former client on a demand which he now claims had previously been paid by him while acting for it in his capacity of attorney. It further appears from the respondent's testimony that he wrote the name of John A. Linn on the check after he received it from the treasurer, and that the reason of his writing Linn's name on the check was, so that both he and the treasurer could identify it as being one given for the payment of the money into court in the interpleader suit. It is therefore clear, both from the testimony of the witness for the relator and from the testimony of respondent, that the check which he received and deposited to his personal account, and thus converted to his own use, was paid to him to be used for a particular purpose, and that respondent not only failed to apply it to that purpose, but, on the contrary, repeatedly refused to do so, even when ordered so to do by the court. The testimony of respondent and Donahue as to the payment to the latter is so self-contradictory that no reliance can be placed upon it, and upon consideration of all of the evidence in the record we are convinced that if the money was actually paid to Donahue the payment was only colorable, and that the same was held by him under the direction and control of respondent.

It is urged that since this proceeding was instituted the Appellate Court, in *Szczukowski* v. *Polska,* 172 Ill. App. 192, has held that the minor child of the deceased was the only one entitled to recover on the certificate; that the payment of the money by respondent to Donahue has been justified and approved by that court, and that respondent's conduct in the premises in paying the money over to the rightful claimant ought not to be censured. The trouble

268 — 19

with this contention is that the evidence clearly shows the alleged payment to Donahue did not relieve the society from liability on the certificate, as is so clearly demonstrated by the case cited by respondent in extenuation of his conduct. The evidence shows that as a result of the respondent's conduct in the premises a judgment for $100 and another for $250 was recovered against the society and in favor of the minor in the county court of Cook county, and still another judgment was recovered for $225 by the surviving parent in the municipal court against the society, and as a consequence of respondent's conduct judgments aggregating $575 have been recovered against the society on a $350 indebtedness, when all of these matters could have been settled in the one suit respondent had instituted in the circuit court and deliberately caused to be dismissed by his refusal to comply with the lawful order of the court made in the premises, and that all of this expense and trouble was incurred while respondent retained the funds of the society he had received upon the express representation that they were to be used in settlement of these claims. Had respondent faithfully discharged his duty to his client in this behalf all of this trouble and expense would have been avoided.

With respect to the charge made in the second count of the information, it appears that one Anton Zygarlowski was a member of the Polish society known as the Polish Roman Catholic Union of America, in which he held a benefit certificate of $500. Zygarlowski died on April 1, 1907, leaving two sons, Vaclav and Roman. The benefit certificate was originally payable to Vaclav, but shortly prior to his death said Anton Zygarlowski, by indorsement on the certificate, directed that $250 should be paid to his son Roman and the other $250 to Vaclav. An assessment was levied by the society on its members and $500 was raised with which to pay this certificate. Both of the sons made claim to the fund, Vaclav claiming the entire $500

and Roman claiming $250. Respondent was consulted by the officers of the society in relation to this matter and advised that a bill of interpleader be filed. His advice was taken and on August 5, 1907, such a bill was filed in the circuit court of Cook county. On December 4, 1907, the officers of the society paid to the respondent, for the purpose of being paid into court, $500, which respondent deposited to his personal account in the bank. No part of this fund was ever paid into court in the interpleader suit or returned to the society or paid to the claimants. That $250 of this money belonged to Vaclav was not disputed. However, respondent never paid any part of the money to Vaclav and neglected to bring the cause to a hearing, and when interviewed by the attorneys representing the respective claimants insisted he should be paid $50 for his attorney fees out of the fund before he would consent to pay the money into court. Conditions remained in this state until March 25, 1908, when an order was entered finding the bill of interpleader was properly filed and the society was ordered to produce and pay the money into court, its costs being taxed at $10. Respondent was in court and refused to comply with the order unless $50 was also allowed him for his solicitor's fees in the matter, and thereafter, on April 23, 1908, a rule was entered on the society to show cause by April 27 why it should not be adjudged in contempt for failure to comply with the previous order of March 25, but no order appears to have been entered upon this rule to show cause. The matter, however, subsequently came on for further hearing before Judge Petit, of the circuit court, on an order on the society to show cause why the money had not been paid into court. The hearing was had on December 6, 1909, and from the certificate of evidence taken at that time it appears that on November 29, 1909, respondent had prepared and left with the clerk a draft of an order dismissing the bill, with a statement to the clerk that it was an agreed order, and requested that

he present the same to Judge Petit and have it entered. That it was not an agreed order and that counsel for defendants had no knowledge of such order is also clearly established by the evidence. It further appears that the court did not enter the order, and that on December 6 respondent moved that the order be entered and the bill dismissed, and the court overruled the motion. At this time the officers of the society were in court ready to testify as to the payment of $500 to respondent on December 4, 1907, as they subsequently did testify, and produced vouchers, books and receipts to substantiate their testimony. With respect to respondent's conduct with reference to the $500 and what occurred at that time the record showed the following:

The court: "Well, what is the situation now with reference to this $500?

Mr. Czarnecki: "May I ask for a ruling on the motion? (Meaning the previous motion of November 29, to dismiss the bill.)

The court: "No; not at this time.

Mr. Czarnecki: "Well, I will renew my motion to dismiss,—this motion to dismiss the bill of complaint.

The court: "Overruled for the present.

Mr. Czarnecki: "Exception.

The court: "Now, if that is all about that order, what is the situation with reference to that $500?

Mr. Czarnecki: "Then I make the further motion to dismiss that order made March 21 of this year.

The court: "Well, I will reserve the ruling on that till you answer my inquiry——

Mr. Czarnecki: "Pardon me——

The court: "Where is that $500 the complainant asked leave to pay into court pursuant to this order?

Mr. Czarnecki: "I don't know."

It further appears from the evidence that shortly thereafter the brothers adjusted the matters in difference be-

tween them, the whole claim being assigned to Vaclav, and that a decree for the full amount of his claim was rendered against the society, but owing to the society being thrown into the hands of a receiver (as the evidence tends to show through information obtained from respondent if not by his active co-operation in the proceedings to that end) the claimant has never received any part of the money raised by the assessment on the members and turned over to respondent to be used in paying the rightful claimant under the benefit certificate. As we understand the evidence this money is still in the possession of respondent.

The respondent does not claim that he has re-paid the money either to the rightful claimants or to the society, but attempts to excuse his action in the premises by claiming that he was authorized by an officer of the society to retain the same in payment of his attorney's fees, earned and to be earned from the society in connection with this and other matters. In corroboration of this claim he introduced in evidence a copy of a purported letter from himself to one Zwierzyuski, the secretary of the society, dated March 19, 1908, authorizing respondent to retain the fund for that purpose, the letter containing the further statement that it is understood that he is not retaining the money as any part of the Zygarlowski voucher. It is not claimed or shown that this officer had any authority to authorize such an appropriation of the trust fund, and Zwierzyuski denied that he ever received the original of which the letter introduced purported to be a copy, or that he ever authorized respondent to retain any part of that fund for the purpose of paying his fees as attorney for the society. It further appears that since the hearing was had before Judge Petit the respondent produced, and was ready and willing to pay over to the receiver, the full amount of the $500 without making any claim of a right to retain a part of the same as having been paid to him on account of his services rendered or to be rendered for the society. It is undisputed

that respondent knew that the money so placed in his hands was a trust fund raised and given to him for a particular purpose, and that he knew that the officer from whom he claimed to have obtained authority to retain the fund and apply it on his claim for fees had no authority to authorize such a misappropriation of that fund. Even accepting respondent's own version of the transaction, it constitutes no defense for his action in the premises.

Attorneys at law are officers of this court. (*People* v. *Chamberlain, supra; People* v. *Payson, supra.*) As such it is their duty to aid in the establishment of truth and the due administration of justice. (*People* v. *Moutray,* 166 Ill. 630.) When a license is granted to one to practice law by this court he assumes grave responsibilities, which only those worthy of trust and confidence and possessed of absolute fidelity and honesty should bear. Confidences are reposed in them; interests of great magnitude, and even the life, liberty and character of their fellow-men, are entrusted to their care. (*People* v. *Ford,* 54 Ill. 520.) A license granted by this court to practice is a guaranty that, so far as this court is advised, the person holding such license is a fit and proper person to assume the responsibilities, to enjoy and safe-keep the confidences of others, and to aid and assist them in the care and management of their legal business and affairs. (*People* v. *Shirley,* 214 Ill. 142; *People* v. *Payson, supra.*) In maintaining this high standard both the people and the courts are alike interested; (*People* v. *Palmer,* 61 Ill. 255;) and to the extent that this court has guaranteed the fitness of one to assume these responsibilities, it possesses the inherent power to recall its certificate whenever it is clearly proven that the bearer is no longer worthy of being entrusted with those trusts and confidences the license indicates he was worthy to assume. *People* v. *Chamberlain, supra; Moutray* v. *People,* 162 Ill. 194; *People* v. *Payson, supra.*

We have decided this case on the record before us, and what is said is not to be taken as determining the issues that may be involved in other cases to which respondent was a party.

After carefully considering all of the evidence in the case submited to us for our consideration, we are of the opinion that the findings of the commissioner were fully justified by the evidence and that the rule heretofore entered disbarring respondent should stand. The petition to reconsider the previous order of this court disbarring respondent will therefore be denied.     *Petition denied.*