(No. 22288.—

IN RE JAMES W. CASEY, Attorney, Respondent.

*Opinion filed December 17, 1934—Rehearing denied Feb. 21, 1935.*

JOHN L. FOGLE, *amicus curiæ*, (HENRY A. GARDNER, JAMES S. BALDWIN, JOHN D. BLACK, RICHARD YATES HOFFMAN, and STEPHEN LOVE, of counsel.)

JAMES E. DANIELS, for respondent.

Mr. JUSTICE ORR delivered the opinion of the court:

The board of managers and the committee on grievances of the Chicago Bar Association, as commissioners, pursuant to the order of this court entered on April 21, 1933, filed an original and supplemental report of their conclusions of fact and law concerning a complaint charging unprofessional conduct on the part of James W. Casey, a member of the bar of this State, and recommended his disbarment. Respondent filed exceptions to the report, and the cause is submitted upon the record and proofs.

James W. Casey was licensed to practice law in this State on October 7, 1921, and since has been so engaged in Chicago. In 1930 the Berger Manufacturing Company, a subsidiary of the Republic Steel Company, retained Casey to make collections for it. The former company manufactures metal booths, lockers, and like articles. Among the accounts placed in respondent's hands for collection was one against the board of election commissioners of the city of Chicago for metal voting booths in the sum of $35,762. Although full payment of this claim was obtained in the form of six checks, the first of which was dated October 2, 1931, and the sixth June 6, 1932, respondent reported the collection of only $16,000. Subsequent to the last payment respondent addressed the company on several occasions stating that the remainder of the account, amounting to $19,762, had not been collected and that he was diligently endeavoring to effect its collection. On December 3, 1931, and again on December 14, 1931, the Great Lakes Construction Company made payments of $5000 each to respondent on an account of the Berger Manufacturing Company against it for steel lockers installed by the purchaser for a high school in Chicago. Following the collection of these sums respondent also represented to his client that he was attempting to collect the account and had not collected the money. Similarly, the collection of sums on four relatively small accounts was not reported by respondent to his client.

It appears that the Berger Manufacturing Company owned certain parcels of real estate in Cook county upon which the general taxes for the years 1930 and 1931 had not been paid. Conformably to respondent's advice it decided to pay a portion of these taxes and file objections to the remainder. It accordingly forwarded to respondent, on or about April 13, 1932, its check for $1500, with directions to pay this sum on account of these taxes and to file objections to the amount of the assessment. Respondent

deposited the check in his personal account with the First National Bank of Chicago. Pursuant to his client's instructions he filed objections to the assessment but did not apply the sum of $1500, or any part thereof, to the payment of its taxes. In the spring of 1933 respondent's client discovered from an examination of the public records that the $1500 had not been applied to the specific purpose for which it was given. The company thereupon caused an investigation of the accounts previously described to be made. According to the testimony adduced by relator, an officer of the Republic Steel Company and an attorney of Cleveland, Ohio, called upon respondent and demanded payment of the unreported moneys. Respondent admitted that he had received the moneys and sought time in which to make restitution. Two months later, no portion of the diverted funds having been re-paid, the local attorneys for the Berger Manufacturing Company made a complaint in its behalf to the committee on grievances of the Chicago Bar Association.

Respondent testified that a large number of steel lockers sold by the Berger Manufacturing Company had been placed by the construction companies purchasing them, in schools in Chicago; that sabotage with respect to them was being committed at the instigation of certain competitors of his client; that to terminate the sabotage, to keep its lockers in the schools and to make collection of the accounts against the board of election commissioners and the Great Lakes Construction Company, George B. Harlan, secretary of the Berger Manufacturing Company, secretly authorized and directed respondent to collect the accounts named and employ all or any part of the proceeds to that end; that pursuant to the authority conferred he employed a racketeer, one Ted Newberry, and paid him $35,000 for his services, and that the latter succeeded in ending the sabotage, in keeping the lockers in the schools and also in collecting the account of the board of election

commissioners. Newberry, described as a public enemy, was found dead in January, 1933. Respondent's testimony that he paid money on various occasions to Newberry was corroborated by witnesses who testified in his behalf. He further testified that his communications to the Berger Manufacturing Company to the effect that he was unsuccessful in collecting the accounts, among others, of the board of election commissioners and the Great Lakes Construction Company, were pursuant to a "pre-arrangement" with Harlan, for the purpose of concealing from the other officers of the company the uses to which the funds were applied. The evidence adduced by respondent further shows that the Berger Manufacturing Company issued written instructions to a bank in Chicago to accept respondent's personal endorsement on all checks payable to the company and to permit him to deposit them in his personal account.

The question of jurisdiction requires initial consideration. Respondent makes the contention that the complaint filed against him was neither signed by the aggrieved party nor verified as prescribed by rule 59 of this court. This contention might have been correct if rule 59 had not been amended by this court on April 21, 1933. Since the adoption of this amendment rule 59 consists of two separable and independent divisions. Of these, the original rule 59 as it obtained prior to April 21, 1933, is applicable to proceedings instituted by informations presented to this court. It provides that upon application to strike the name of an attorney an information shall be filed making clear and specific charges, giving time, place and acts of misconduct with reasonable certainty. The information must be signed by the Attorney General, a State's attorney, the president and secretary of a regularly organized bar association, or any person aggrieved by the misconduct of the attorney charged. It is further provided that where the information is signed by the aggrieved person he shall verify it by an affidavit upon which perjury might be assigned, and

that the aggrieved person must be represented by an attorney on the roll. If the information be deemed sufficient this court enters a rule to show cause, and, following the filing of an answer to the rule, prescribes the time of closing proofs, and the cause then stands for hearing. On April 21, 1933, we entered an order directing that "in addition to the means of discipline provided in rule 59 of this court, there be and are hereby appointed" two bodies of commissioners, one, the board of governors and the committee on grievances of the Illinois State Bar Association, and the other, the board of managers and the committee on grievances of the Chicago Bar Association, to investigate practices of members of the bar "which tend to defeat the administration of justice or to bring the courts and the legal profession into disrepute." "To this end," the order continues, "these commissioners are further empowered and charged to receive, entertain, inquire into and take proof concerning complaints against attorneys at law of this State, and may call to their assistance in such inquiries other members of the bar or bar associations of the State, make all necessary rules and regulations concerning the conduct of such inquiries, and may themselves, or by such committees as they may designate, take the evidence of witnesses as hereinafter provided. The hearings before the commissioners or committees shall be private unless the respondent shall request that they be public." The evidence of witnesses, it is provided, must be under oath.

The complaint in this proceeding was signed by the client's attorneys. It will be observed that by rule 59, where the proceeding is by information, express provision is made that if the information is signed by the aggrieved person he shall verify it by an affidavit upon which perjury can be charged. The order of April 21, 1933, states that the procedure it prescribes is additional to the means of discipline provided in rule 59 prior to that day. These

two proceedings authorized by rule 59 are obviously of like force and effect. A proceeding instituted under the authority of either of these provisions would be proper. Whether a verification of the complaint assailed by respondent was essential must therefore be ascertained from the context of the order of April 21, 1933, and not from the mandatory requirement of rule 59 applicable to informations. The commissioners are authorized "to receive, entertain, inquire into and take proof concerning complaints against attorneys at law of this State." Neither expressly nor by implication, in the provision quoted or in any other part of the order of April 21, 1933, is it required that a complaint be verified. The reason for the requirement of a verified complaint in the one instance and not in the other is manifest. Under original rule 59 the requirement for verified complaints was intended to conserve the time of this court by discouraging the filing of ill-conceived charges by disgruntled clients against attorneys and to protect the latter from being called upon to defend groundless charges. Under rule 59 as it existed prior to April 21, 1933, the filing of an application in this court for a rule to show cause, irrespective of merit, frequently had the effect of irremedially damaging attorneys unjustly accused. Furthermore, the court in such cases was required to become acquainted with and devote considerable attention to these applications prior to a hearing on the merits. Upon the entering of a rule to show cause the matter was then referred to a specially designated commissioner to hear evidence and report his conclusions of fact and law, and his report was then filed and considered by this court. Under the amendment of April 21, 1933, the progress of a disciplinary proceeding is facilitated, and the cause is not presented to this court until the completion of the hearing before the commissioners, and then only "if action by this court of any kind is recommended." The accused enjoys the benefit of a private hear-

ing unless he elects otherwise. The preferment of baseless charges under the order of April 21, 1933, is clearly less harmful to the attorney wrongfully accused than if made under the original provision. This court has jurisdiction of respondent, as a verified complaint is not required by that part of rule 59 under which the proceeding originated.

Respondent contends that the findings of the commissioners are not sustained by the evidence and that the punishment recommended is too severe. Attorneys at law admitted to the bar of this State are officers of this court. (*People* v. *Czarnecki,* 268 Ill. 278; *People* v. *Payson,* 215 id. 476.) The relation of the court and its attorneys to the people is one of high responsibility, and involves on the one hand complete trust and confidence and on the other absolute fidelity and integrity. (*In re Zahn,* 356 Ill. 283.) The wrongful conversion by an attorney at law of funds placed in his hands for a specific purpose is a flagrant violation of his duty sufficient to cause his disbarment. *People* v. *Hansen,* 352 Ill. 144; *People* v. *Ladouceur,* 347 id. 454; *People* v. *Kwasigroch,* 296 id. 542.

The evidence discloses, among other things, that a Chicago bank was authorized to accept from respondent, for deposit in his individual account, checks made payable to the Berger Manufacturing Company. There is evidence that he was authorized to make disbursements therefrom in order to accomplish certain purposes, and, in particular, that his client authorized him to deal with Newberry. These and like circumstances undoubtedly tended to encourage or tempt respondent in conduct which can not be condoned. The opportunity for the commission of reprehensible actions, created in part by the client, cannot, however, absolve respondent from his own derelictions. The record shows conclusively that respondent had concealed the collection of over $30,000 from his client. When questioned by officers of the Berger Company as to these collections, for which he had not accounted, respondent

admitted that he had collected the money and promised to make restitution thereof if given time. His chief defense was that one of the officers of the company, who has since been discharged, colluded with him and kept secret from the other officers of the company the purposes and manner of payment of these funds to a Chicago racketeer. Even if this story is believed, respondent has not absolved himself from highly improper conduct as an attorney. We are of the opinion that respondent has forfeited his right to bear the license of this court to practice law and thereby induce persons requiring the services of an attorney to repose confidence in him and to entrust their property to his care.

Subsequent to the filing of a petition for rehearing, respondent has asked this court for leave to file an amended petition for rehearing on the grounds of some newly discovered evidence. We have examined the motion, together with affidavit and exhibits filed in support thereof. They purport to show the payment of $1950 to George B. Harlan in April, 1932. Harlan was then secretary and treasurer of the Berger Manufacturing Company, and it is claimed that this payment of $1950 to Harlan included the $1500 previously advanced to respondent by the company for taxes. The charge that respondent received $1500 from the company for payment of taxes and failed to make the payment was made on May 18, 1933, and it was the discovery of this fact which first led to an investigation of his activities. In his answer he made no denial of this specific charge. He testified at different hearings and acted as his own attorney in the examination and cross-examination of other witnesses but at no time mentioned the repayment of this $1500. He filed a brief and argument on February 17, 1934, wherein his explanation as to the $1500 was that full authority had been delegated to him as to when and how much of the taxes should be paid. He filed a reply brief and argument on March 31, 1934, and there

again stated that the disposition of this $1500 was entirely up to him to decide and determine. No mention of the restitution of this $1500 is to be found either in the testimony or in the different briefs filed by respondent in this court during the many months it has been pending. This motion comes too late and is therefore denied.

The report and recommendations of the commissioners are approved, and the name of respondent is ordered stricken from the roll of attorneys of this court.

*Respondent disbarred.*