(No. 22610.—▉▉▉▉▉▉▉▉▉▉)
In re Louis W. Mack, Attorney, Respondent.

*Opinion filed April 12, 1935—Rehearing denied June 5, 1935.*

Charles M. Thomson, *amicus curiæ.*

Joseph B. Lawler, and C. Ray Smith, for respondent.

Mr. Justice Farthing delivered the opinion of the court:

The disbarment of Louis W. Mack is recommended in the report and supplemental report filed in this cause by the committee on grievances of the Chicago Bar Association, acting as commissioners of this court.

Respondent's, Mack's, motion for leave to file certain additional exhibits and to make them part of the record as an appendix thereto was taken with the case. That motion is hereby allowed, and the releases executed by the complainants, who charged that respondent was guilty of unprofessional and unethical conduct, will be given whatever evidentiary value they afford to show the intention respondent had in retaining funds belonging to his clients.

None of the seven complaints were sworn to. Although three were filed before we entered the order of April 21, 1933, making the committee on grievances of the Chicago Bar Association commissioners of this court in disciplinary matters, the only hearing abstracted began with December 9 in that year. That order effected a change in procedure alone, and there is, therefore, no merit in the contention of respondent that the commissioners of this court were without jurisdiction because the complaints are not verified. (*In re Casey*, 359 Ill. 496.) However, we prefer to set out the facts with reference to the three earliest complaints lodged against respondent and to base the decision in this matter upon those charges filed after the order of April, 1933, was entered.

Louis W. Mack was licensed to practice law by this court on October 18, 1909. Since that time he has practiced law in Chicago. On March 17, 1932, Walter C. Liebner, of Milwaukee, Wisconsin, and Russel S. Diaz, of Chicago, executed a contract by which Liebner agreed to sell to Diaz Liebner's interests in land acquired under the foreclosure of a second mortgage. Diaz was to, and did, deposit with Mack $1750 to be held by respondent as earnest money, conditioned upon the examination of title to the land by Diaz's attorney. The last of the $1750 was deposited with Mack on March 9, 1932. On March 31, 1932, Diaz borrowed $250 of the earnest money from Mack, and on May 21, 1932, gave Liebner his note for this $250. This left $1500 in respondent's hands. Diaz notified Mack

of the arrangement with Liebner as to the $250, and on May 21, 1932, advised Mack that the latter would not represent Diaz thereafter in any matters whatsoever. Liebner and Diaz reached the point where Diaz was satisfied as to the title to the land covered by the second mortgage and was ready to close the purchase. Accordingly Liebner demanded the remaining $1500 of Mack on May 23, 1932. On this last named day respondent wrote to Liebner and Diaz stating that he would pay the $1500 to Liebner on June 2, 1932. By the original report of the commissioners, dated December 12, 1933, it is found that respondent fraudulently converted this $1500 and that he had failed and refused to pay it over to Liebner.

Respondent says that Diaz was acting for one Edgar C. Wilson, that Wilson and Liebner were not on good terms, and that the interest of Wilson in the purchase from Liebner was concealed from Liebner. Respondent also claims that many creditors of Diaz made claims against the $1750 in his hands, and that he could not, on this account, pay the money to Liebner. It is not claimed that any garnishment or other process was ever served on Mack by any such creditor of Diaz. One of the exhibits allowed to be filed by Mack as an appendix is a release from Liebner, who received $1000, and another is a release from Wilson, who received $250. Mack retained the other $250 out of the $1500 in his hands. His objections to this complaint are that Liebner's attorney, Merritt C. Bragdon, Jr., signed it, that it was not sworn to or signed by Liebner, and that the complaint is stale.

The facts relative to the second complaint are that A. H. Meyer, of Oak Park, Illinois, on June 21, 1927, employed respondent to collect two promissory notes from J. L. Barnard, one for $200 and the other for $1729.01. With the notes was a life insurance policy as collateral. Respondent told Meyer from time to time that he was making an effort to collect and had forwarded the notes

and policy to an attorney either in St. Paul or Minneapolis, where the debtor lived. Meyer demanded the return of the notes and insurance policy in June, 1930, and discharged Mack. Mack seems to have never returned these papers to Meyer. As a part of this complaint there is also involved the payment of $89.27 to respondent by Meyer on March 13, 1928, covering the first installment due on Meyer's income tax for 1927. Respondent failed to pay this money to the internal revenue collector and had not re-paid it to Meyer when the original report of the commissioners was filed herein. About May 1, 1928, Meyer also paid to Mack $379.63, which was the amount of the 1926 taxes on Meyer's home in Oak Park. The taxes levied on this property for 1927 amounted to $515.97. Mack was to pay the same amount as had been paid by Meyer for 1926 and was to protest against the remainder of the 1927 tax. Instead he retained the money, and as a result Meyer was compelled to redeem the property from a sale for delinquent taxes.

Respondent contends that he did not receive the money from Meyer, although Mack's endorsement appears on the check in evidence for $379.63. He says that one Fitzgerald did receive the money at Meyer's insistence; that Fitzgerald had a room in the same office suite with Mack but was not a member of his firm or an employee of Mack, and that Fitzgerald and Meyer, with a third man, robbed Mack's office and took the actual cash, $379.63, the notes, the insurance policy and many other valuable papers. However, one of the exhibits in the appendix is a release from Meyer, for which Mack paid him $379.63.

The third complaint was based on a transaction in which Mack received $4376 on December 5, 1928, with which to settle the accounts of the Jahn & Ollier Engraving Company and the Western Newspaper Union due from the American Homes Bureau. These creditors had agreed to accept fifty per cent of their claims under a composition.

Herbert Kent was named assignee under an assignment for the benefit of creditors, and he and these two creditors demanded that Mack turn the money over to him. Mack refused to put the money to its intended use and claimed that the fund was subject to his attorney fees. Finally, after repeated demands and some hearings before the committee on grievances, the fund was turned over to Kent on June 13, 1929.

On August 19, 1933, Mrs. Frances Richter filed her complaint with the Chicago Bar Association. She had employed Mack as her attorney to administer the estate of her husband. He caused letters of administration to be issued on October 7, 1930, and filed an incomplete inventory on July 26, 1932, but did not complete the administration of the estate. On December 1, 1930, he obtained the sum of $250 from Mrs. Richter on the false representation that it was to be used by him to pay the inheritance tax due the State of Illinois. The estate owed no such tax. Respondent filled out this check and noted on the stub that the money was to be used for this purpose. At one of the hearings he produced an envelope containing $250 in cash. He stated that it contained the money which he had obtained from Mrs. Richter for the inheritance taxes, but that it had been misplaced in the vault and he had just found it a few days before he testified. On January 26, 1933, he obtained from Mrs. Richter the sum of $172.80 upon the representation that it was needed to pay the Federal estate tax. No such tax was due from this estate. At other times he received other sums of money on one representation or another. He obtained $147.50 from this client in the matter of the adoption of her stepdaughter, Eleanor. He represented that $100 of this latter sum was needed for a bond. He also induced her to turn over a check for $262 and another for $250 to wind up the estate. The record shows that he recommended that Mrs. Richter should loan $12,000 to Alfred H. Maack, a

distant relative of respondent. This loan was secured by a mortgage on farm land. Respondent did not get permission of the probate court to make the loan and the loan was never approved by that court. Respondent denies that he advised that the loan be made, but says that it was made only after he had admonished Mrs. Richter that she must be satisfied that the loan was good, and that he could not advise her because of his kinship to the borrower. There is a conflict in the testimony as to the value of the land, but it is significant that when Alfred H. Maack borrowed the money he owed but $8000 on the land, and yet he obtained a loan of $12,000 from Mrs. Richter as administratrix. Respondent's defense to this complaint is in the nature of an alibi. He produced receipts for his hotel bills at the Hollenden Hotel, in Cleveland, Ohio, covering part of the time consumed in the negotiation of this loan. Respondent was named trustee in the trust deed. His testimony that he did not advise that this loan be made is contradicted by Mrs. Richter's statement that he told her that the probate court had ordered her to invest the funds of the estate in this mortgage. Although, as respondent points out, the facts with reference to this mortgage loan form no part of Mrs. Richter's complaint against him, no objection to the testimony as to the loan appears in the case, and respondent and his distant relative both testified in answer to these charges. Respondent could have objected had he seen fit, and not having done so the matter is properly before us for consideration with the other grounds of this complaint.

A wanton abuse of trust is shown in the complaint of Robert H. Jamison, an attorney of Cleveland, Ohio. He was a schoolmate of respondent and for many years exchanged legal business with him. He has filed an affidavit in this court stating that respondent was not culpable in withholding the sum of $2500. However, this affidavit was made after he had been paid in full. The testimony

he gave at the hearing before he received payment is at variance with the affidavit. Mary H. Jamison, the mother of Robert H. Jamison, owed a mortgage indebtedness on her farm in Ohio. This mortgage was held by the National Life Insurance Company of the United States of America, which went into receivership in October, 1933. Foreclosure proceedings were instituted and progressed to a decree. Jamison arranged with the Federal Land Bank of Louisville, Kentucky, to re-finance the loan. He employed respondent to handle the negotiations in Chicago. Respondent interviewed the attorney for the receiver and ascertained that $12,480 was necessary to pay off the loan. Respondent requested Jamison to forward $2500 to facilitate closing the transaction. This amount was not requested by the receiver or his attorney, and when the money was advanced to respondent he did not use it for the purposes for which it was sent to him. No excuse is made for respondent's conduct in this matter, and he did not re-pay the money until after the commissioners' report was filed recommending his disbarment. Respondent objects to the jurisdiction of this court and of the commissioners in this matter because notice of his complaint was served upon his attorney instead of himself. The attorney upon whom the notice was served represented him in the other complaints and he is noted of record here. No answer on the merits was ever tendered, and we are not inclined to attach any merit to this argument of respondent.

On December 27, 1933, Major Frank L. Beals made complaint to the committee on grievances with reference to respondent's conduct as his attorney. Respondent had conducted much litigation for Beals and many of the sums of money given to respondent were for attorneys' fees. However, respondent obtained $1500 from Beals to settle a suit for rental on Camp Roosevelt for 1932 and $1100 to pay the rental for 1933. The money was never applied to the purposes for which it was given to respondent. Beals

later, through another attorney, settled these suits for $2000. Respondent also obtained $750 from Beals to settle a claim which the Congress Trust and Savings Bank had against him. This sum was not applied to this purpose, with the result that Beals had to pay the claim in full. The Beals release shows that respondent paid him $3000 on June 14, 1934.

The complaint of Albert Waldman, who operates a cigar store in Chicago and who employed respondent to advise him with reference to a threatened suit upon a lease against him, is not serious. The evidence is conflicting, but the conclusion that we draw is that the $165 given to respondent in connection with the suit was not an unreasonable charge, and there is evidence that respondent had done other work for Waldman. No abuse of the relation of attorney and client is shown in his dealings with Waldman.

There is no merit in the contention of respondent that he obtained releases and paid each releasor merely to buy his peace.

The case of *In re Borchardt,* 357 Ill. 458, is relied upon by respondent. That decision contains nothing that would indicate that Mack should be suspended instead of being disbarred.

For the abuse of the rights of Mrs. Richter, Robert H. Jamison and Major Beals, clients of this respondent, and for the unethical conduct of which this record shows he is guilty, Louis W. Mack is disbarred from the practice of law. His name is stricken from the roll of attorneys of this court. The reports and recommendations of the commissioners are approved. *Respondent disbarred.*