In re Estate of Paul Beelow.
Frank T. Hines, as Administrator of Veterans' Affairs,
Appellee, v. Marie Franz, Appellant.

Gen. No. 38,599.

Opinion filed July 3, 1936.

VINCENT G. PONIC, of Chicago, for appellant; JOHN
I. MAYER, of Chicago, of counsel.

H. R. POOL and M. W. RUSSELL, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the
court.

Marie Franz, conservatrix of the estate of Paul
Beelow, a distracted World War veteran, filed, in the

probate court of Cook county, her current account covering the period from May 27, 1932, to October 27, 1933. In that account she asked the court to credit her with the following item:

"Total of amount taken from estate through wrongful appropriation by the then attorney of Marie Franz, conservatrix, on June 8, 1933 (as more fully set forth in supplementary affidavit of Marie Franz hereto attached): $5700.00"

The supplementary affidavit is as follows:

"STATE OF ILLINOIS }
  COUNTY OF COOK } ss.

"MARIE FRANZ, being first duly sworn deposes and says that she is of lawful age and resides at 3109 North Lotus Avenue, Chicago, Illinois; that she is now and ever since May 27, 1930, has been the legally appointed and duly qualified and acting conservatrix of the estate of Paul Beelow, C-249, 413, a distracted person, under appointment by the Probate Court of Cook County, Illinois; that she is a sister of said Paul Beelow; that she has prepared and filed with the Probate Court and with the Chief Attorney of the Veterans Administration her annual accounts and reports from year to year; that one John F. Grote, 4600 Fullerton Avenue, Chicago, Illinois, was her attorney in the preparation of her accounts and their presentation to the Probate Court of Cook County, Illinois, for allowance; that said Grote acted in that capacity with reference to report for the period of May 27, 1932, to May 27, 1933; that your affiant and said attorney, John F. Grote, contemplated having said account settled by the Probate Court at 2:00 o'clock P. M. on Thursday, June 8, 1933; that about one week prior to said date Attorney Grote telephoned your affiant to meet him in the vault of the State Safe Deposit Company on June 8, 1933, at 1:30 P. M. for the purpose of taking the securities belonging to the estate from the vault

for presentation to the Court as part of the proceeding in proving up the current account and report. Your affiant went to the Company mentioned, as directed, arriving there about 12:50 P. M. on June 8, 1933. I signed the usual request for admission to the safety deposit box. Mr. Milburn Anderson, an employee of the Globe Indemnity Company, surety on my bond, who was also present, also signed such request. Thereupon, the attendant at the bank opened the box. The said Surety Company has joint control over this safety deposit box. The safety deposit compartment having been opened by the attendant thereupon drew out the box and handed it to Mr. Grote who opened the lid and took therefrom five envelopes containing the following property and securities belonging to this estate:

U. S. 4th Liberty Loan Bonds.......$5700.00
First Mortgage of.................. 9000.00
First Mortgage of.................. 4000.00
Certain other insurance papers, the
    exact import of which affiant does
    not know,

and placed them in his brief case. Thereupon the three of us, Mr. John F. Grote, Mr. Milburn Anderson, and your affiant left the vault and went out on the sidewalk in front of the building and proceeded down LaSalle Street, toward the City Hall about a block away. After reaching the first corner, Mr. Milburn Anderson left the party, stating that it was necessary for him to go and interview someone and that he would rejoin us in the courtroom. Your affiant and Attorney Grote proceeded directly to the court room of Judge Weiss. Mr. Grote carried the brief case containing the securities all the while. When Mr. Grote and your affiant came to the door of Judge Weiss' courtroom, Mr. Grote said to your affiant, 'You go in and sit down while I go after the docket.' When he left he took the brief case with him. After about ten or fifteen

minutes he came back into Judge Weiss' court room and after placing the docket on the table came over to where your affiant was sitting on a bench and placed the brief case beside her. At that time your affiant noticed that one of the buckles was opened. As he did so, he said to your affiant, 'you stay right here while I go and get the file.' Thereupon he left Judge Weiss' court room. About twenty minutes later Mr. Milburn Anderson came into the room. He did not say anything but seeing Mr. Grote was absent he went away again and was absent about one-half hour. At the end of that time Mr. Anderson returned and asked me where Mr. Grote was. I told him Mr. Grote has gone out and not yet returned. Then Mr. Anderson went away a second time and stayed away about twenty minutes, at the end of which period he again returned and asked if I knew what had happened to Mr. Grote, that he must have forgotten the report, or words to that effect. I told him that Mr. Grote had not returned as yet. Thereupon Mr. Anderson left again and stated that he had to go back to the office. Your affiant sat in the courtroom until the Judge asked her whom she was waiting for. Your affiant answered that she was waiting for Attorney Grote. This was about four o'clock in the afternoon. Thereupon Judge Weiss asked your affiant why she did not go out and look for him; that perhaps he had forgotten about the report. In response, your affiant told him that there were valuables in the brief case and that she did not want to go walking about with it; that the docket was lying on the table and that accordingly Mr. Grote would have to come back. Then the Judge said, 'All right, then you may wait,' or words to that effect. Then your affiant sat there until the Judge left the room at about 4:45 P. M. whereupon your affiant went into an adjoining room and telephoned Mr. Anderson. I told Mr. Anderson that Mr. Grote had not returned

and asked Mr. Anderson to come over to get me to take the valuables back to the vault. He said that the vault was closed and that I should take a cab and come over to his office and that 'We will keep them in our safe for the night.' We were talking about the bonds and securities at the time. When your affiant arrived in Mr. Anderson's office, both he and your affiant commenced checking up what was in the brief case. We found the bonds missing and that there were only four envelopes of the original five in the brief case. The four envelopes in question were placed by Mr. Anderson in a safe in his office temporarily. Thereupon, Mr. Anderson started out to look for Mr. Grote. Your affiant went with him and the two of us engaged a taxi cab and proceeded to Milwaukee Avenue and Fullerton Street where your affiant left the cab with the understanding that Mr. Anderson was going on to 4600 Fullerton Avenue, Chicago, Illinois, which is the address of Mr. Grote's office. About 7:30 P. M. on June 8, 1933, Mr. Anderson telephoned me that he had not heard anything of Mr. Grote but that he had reported it to the police. Mr. Anderson also stated that he telephoned the office of Mr. Grote at 4600 Fullerton Avenue and the first time he received no answer. Thereupon he telephoned an oil station which appears to adjoin Mr. Grote's office, whereupon Mr. Anderson was informed by the attendant at the oil station that Mr. Grote had not been seen since noon on June 8, 1933. Mr. Grote has an extension telephone from his office to the oil station mentioned, according to information received by your affiant from Mr. Anderson.

''The four envelopes mentioned herein containing the securities which were placed temporarily in the vault in the office of Mr. Milburn Anderson were on June 9, 1933, returned to the vault of the State Safe Deposit Company from which they were removed at 1:45 P. M. on June 8, 1933, as heretofore said. . . .''

In objections to the approval of the $5,700 item filed by the Administrator of Veterans' Affairs, it is alleged that the Globe Indemnity Company was a surety on the bond of the conservatrix and had joint control over the assets belonging to the estate; that the conservatrix could not disburse, move or in any way handle the assets belonging to the estate without the joint concurrence and approval of the said company; that the loss of the bonds from the estate occurred through the fault, neglect and improper management of the estate by the conservatrix, and that the entire item in question should be disallowed and stricken from the account.

At the conclusion of the hearing in the probate court the court held that the conservatrix was personally liable to the estate "for the sum of $5700.00 in the form of cash for and in lieu of the United States Government bonds which were lost from this estate through the alleged misappropriation thereof by attorney John F. Grote on or about June 8, 1933. . . . That said conservatrix be and she hereby is held personally liable to the within estate for interest on said sum at the rate provided for in said bonds respectively from the date interest was last credited to the estate on said bonds to June 8, 1933, and with interest at the legal rate per annum from and after June 8, 1933." The conservatrix appealed from the order of the probate court and the matter was tried *de novo* in the circuit court.

In the circuit court the conservatrix testified, in substance, to the same state of facts as were averred in her affidavit in the probate court, and in addition she testified that she had been conservatrix for five years prior to the time in question and had submitted current accounts yearly to the probate court; that on each occasion Attorney Grote and she had followed the same procedure in reference to obtaining the secu-

rities and taking them to the probate court; that the mother of the conservatrix had acted as conservatrix of Paul Beelow for twelve years and upon her death the witness became the conservatrix; that Grote acted as the attorney for the mother in the administration of the estate and also acted as attorney for the mother in the latter's personal legal matters; that the witness knew Grote well and trusted him because his honesty and integrity had never been questioned. The president of A. Holinger & Company, mortgage bankers, testified that Grote was an attorney, duly licensed to practice law in the State of Illinois; that he had known Grote for many years, and that the latter had "a very good reputation for honesty and integrity"; that Grote had handled "a lot of business" for him; that Grote owned real estate. No evidence was introduced by the Administrator of Veterans' Affairs.

The trial judge, in deciding the case, stated that the conservatrix should have kept the securities in her possession when she arrived at the probate court even though she had an attorney; "that it was somewhat negligent on her part to turn those securities over to the attorney as she did. She should have kept those under her control at all times and never trusted her attorney. While in this case she did select an attorney, I think, whom she thought to be reputable, she is responsible; . . . that she was negligent in entrusting the securities to her attorney"; that she should have carried the securities from the vault. The trial court held, upon motion of the Administrator of Veterans' Affairs, that when the conservatrix obtained her bond from the indemnity company she entered into a joint control agreement with the Globe Indemnity Company and thereby became a guarantor of the funds. The trial court thereupon entered an order that the conservatrix was adjudged personally liable to the estate for the sum of $5,700, together with inter-

est on that sum at the legal rate from the date interest was last credited to the estate on the bonds, and "that if any or all of the said bonds are recovered by said conservatrix, the said bonds or any of them may be shown as assets of said estate in the next account of conservatrix and in lieu of the said sum of $5700.00, together with interest as aforesaid and, in the amount of the bonds so recovered; otherwise, the said conservatrix shall be charged with cash on hand in said sum of $5700.00, together with interest thereon as aforesaid." The conservatrix has appealed from that order.

The law bearing upon the question of the care required by a conservator is well settled. He must act with the highest degree of fidelity and with the utmost good faith, but he is held to the exercise of only that degree of skill, care and diligence which an ordinarily prudent man bestows on his own similar private affairs. If his acts will stand the test of that rule he cannot be held liable for any loss that may be sustained by the estate.

"The statute and the rules of this court require a good moral character as a condition precedent to a license as an attorney. This includes at least common honesty." (*People: ex rel. Healy v. Macauley,* 230 Ill. 208, 213. See also *People v. Gilmore,* 345 Ill. 28, 46.)

"Attorneys are officers of this court and their conduct as such is subject to supervision by it. They are, in effect, a part of the judicial system of the State. (*In re Day, supra* [181 Ill. 73]; *People v. Czarnecki, supra* [268 Ill. 278]; *Ex parte Secombe,* 19 How. 9; *Ex parte Wall,* 107 U. S. 265.)" (*People v. Peoples Stock Yards Bank,* 344 Ill. 462, 470.)

"When a license is granted to one to practice law by this court he assumes grave responsibilities, which only those worthy of trust and confidence and pos-

sessed of absolute fidelity and honesty should bear. Confidences are reposed in them; interests of great magnitude, and even the life, liberty and character of their fellow-men, are entrusted to their care. (*People v. Ford,* 54 Ill. 520.) A license granted by this court to practice is a guaranty that, so far as this court is advised, the person holding such license is a fit and proper person to assume the responsibilities, to enjoy and safe-keep the confidences of others, and to aid and assist them in the care and management of their legal business and affairs. (*People v. Shirley,* 214 Ill. 142; *People v. Payson,* 215 id. 476.) In maintaining this high standard both the people and the courts are alike interested, (*People v. Palmer,* 61 Ill. 255,) and to the extent that this court has guaranteed the fitness of one to assume these responsibilities it possesses the inherent power to recall its certificate whenever it is clearly proven that the bearer is no longer worthy of being entrusted with those trusts and confidences the license indicated he was worthy to assume." (*People v. Gorman,* 346 Ill. 432, 444.)

The honesty of the conservatrix is not questioned. That she did not act negligently in retaining Grote as her attorney in the matter of the estate is not disputed. After a careful examination of all the facts and circumstances we hold that the conservatrix was not negligent in the performance of her duties at the time in question. It would be a strange doctrine, if it were the law, that a conservatrix would be guilty of negligence in the performance of her duties if she intrusted to her attorney the temporary possession of securities at a time when the parties were in the probate court to present her account to the court, which proceeding would require the exhibition of the securities to the court. Such a rule would amount to a serious and unwarranted reflection by the courts on the integrity of its officers, members of an ancient and honorable

profession. It is not the law that a conservator must regard his lawyer with suspicion and deal with him at arm's length. From the very nature of the relationship, a client at times must intrust to his lawyer, temporarily at least, the possession of securities. It is undoubtedly true that a conservator, under certain circumstances, would be guilty of negligence in permitting his lawyer to have the possession of securities belonging to the estate.

The Administrator of Veterans' Affairs contends that the judgment of the circuit court may be sustained upon the theory that "the conservatrix is personally liable for the loss of the bonds to the estate because in delegating joint control over the cash and securities of the estate she became a guarantor of the funds of the estate." Assuming that the joint control doctrine relied upon in the contention prevails in Illinois, it has no application to the facts of the instant case.

Upon the oral argument counsel for both parties informed the court that after the judgment was entered in the circuit court Attorney Grote was arrested in a sister state, all of the bonds, but not the interest coupons, were recovered and restored to the estate, and that Grote has been convicted and sent to the penitentiary for his criminal conduct in the premises.

The judgment of the circuit court of Cook county is reversed and the cause is remanded to that court with directions to allow the item in question in the account of the conservatrix.

It will be the duty of the probate court to make the proper adjustments in the account of the conservatrix, made necessary by the return of the bonds.

*Judgment reversed and cause remanded to the circuit court of Cook county with directions.*

SULLIVAN, P. J., and FRIEND, J., concur.